Mary WINCHEK, Appellant,

v.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Appellee.

No. 01–06–00392–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 17, 2007.

John V. Mastriani, Attorney At Law, P.C., Houston, TX, for Appellant.

B. Bruce Johnson, Johnson & Silver, LLP, Dallas, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION ON REHEARING

LAURA CARTER HIGLEY, Justice.

On April 19, 2007, we issued an opinion affirming the trial court's judgment. Appellee, American Express Travel Related Services Company, Inc. ("Amex"), moved for rehearing. We deny the motion, but withdraw the opinion dated April 19, 2007, and issue this opinion in its stead. Our judgment of the same date remains unchanged.

Amex sued appellant, Mary Winchek, for breach of contract for failing to pay a credit card debt. Winchek appealed the summary judgment rendered in favor of Amex.

In what we construed as four issues, Winchek contends that the trial court erred by granting Amex's motion for summary judgment on its breach of contract claim[1] because (1) Amex's summary judgment proof was insufficient to establish the existence of a contract and the damages sustained; (2) genuine issues of material fact preclude summary judgment; (3) Win-

---

1. Winchek also appears to challenge a quantum meruit claim by Amex. We do not find a quantum meruit claim stated in Amex's petition or motion for summary judgment.

chek's supplemental response was improperly stricken as untimely; and (4) Winchek's motion for continuance to depose Amex's summary judgment affiant was improperly denied.

We affirm.

## Summary of Facts and Procedural History

Winchek was the holder of a credit card, an "American Express Green Card" ("the Card"), issued by Amex. Winchek used the Card to purchase goods and services on account. The terms of the account were governed by an "Agreement Between Cardmember and American Express Travel Related Services Company, Inc." ("the Agreement"). The Agreement, which Amex contends it sent to Winchek at the time the Card was issued, stated that by keeping, signing, or using "the enclosed American Express Card," the cardholder agreed to the terms stated in the Agreement. It is undisputed that Winchek kept and used the Card.

The Agreement provided that payment for all charges was due immediately upon receipt of each billing statement and that unpaid balances were subject to certain late fees. Certain purchases, however, could be made under a deferred billing feature, a "Sign and Travel and/or Special Purchase Account" ("Sign and Travel"),[2] which permitted the cardholder to make a certain minimum payment each period toward the total balance. The Sign and Travel balance was subject to certain finance charges.

Each month, Amex sent billing statements to Winchek, and it is undisputed that Winchek did not challenge the accuracy of the statements. Winchek made monthly payments to her account through June, 2003, but failed to make payments in July and August, 2003. Subsequently, Amex cancelled the Card.

On October 4, 2004, Amex sued Winchek, alleging breach of contract and "a cause of action for account stated." Winchek answered with 25 defenses, including release; accord and satisfaction; compromise and settlement; waiver; estoppel; excuse; usury; fraud; failure of conditions precedent; failure to mitigate; lack of consideration, capacity, and notice; and that the claims were barred by the statute of frauds and statute of limitations.

On June 1, 2005, Amex moved for summary judgment on its claims on the grounds that Winchek had, by accepting and using the Card, agreed to pay Amex for all amounts charged to her account, that Amex performed all terms and conditions as provided in the Agreement, that Winchek breached the Agreement by failing to pay the charges as agreed, and that damages for the unpaid charges and fees totaled $36,675.17 plus attorney's fees and costs. As evidentiary support, Amex attached the Agreement, a series of Winchek's account statements, and the affidavits of Ira Axelrod, Manager of Credit Operations and custodian of records for Amex, and Jamie Silver, in support of attorney's fees.

On July 5, 2005, Winchek responded that Amex had failed to prove the existence of a valid contract and its terms, had failed to negate Winchek's affirmative defenses, and had failed to proffer competent summary judgment evidence. Winchek

---

**2.** The Sign and Travel feature permitted the cardholder to defer payment on airline tickets, cruise ship tickets, prepaid tours, and any other transactions designated by Amex. The Special Purchase Account permitted the cardholder to defer payment on eligible purchases over $350. To qualify for deferred billing, the cardholder was required to notify the merchant at the time of purchase that deferred billing was elected.

appended the affidavit of her attorney, John Mastriani.

On July 13, 2005, the trial court granted a final summary judgment in favor of Amex, without stating its basis. Subsequently, Winchek moved for a new trial, complaining that summary judgment had been granted "exclusively on the sworn account" claim and that recovery under such theory was not available to a credit card issuer. Winchek also argued that Amex had improperly attempted to recover under a quantum meruit theory. In addition, Winchek alleged that Axelrod's affidavit was insufficient because it had not been formally sworn to as true and correct. Amex responded that summary judgment had been properly granted on its breach of contract claim and that it had not alleged a suit on a sworn account or stated a quantum meruit claim. On September 14, 2005, the trial court granted Winchek's motion for new trial without stating its basis.

On October 5, 2005, Amex again moved for summary judgment on the grounds that Winchek had, by accepting and using the Card, agreed to pay Amex for all amounts charged to her account, that Amex had performed all terms and conditions as provided in the Agreement, that Winchek had breached the Agreement by failing to pay the charges as agreed, and that damages to Amex for the unpaid charges and fees totaled $36,675.17 at the time of suit, plus attorney's fees. Once again, Amex attached the Agreement, a series of Winchek's account statements, the affidavit of Axelrod, and the affidavit of Rhonda M. Ryemon in support of attorney's fees.

A hearing on the motion was set for December 30, 2005. On the night of December 27, 2005, Winchek filed a response to the motion for summary judgment, to which she appended her own affidavit as evidentiary support. On January 23, 2006, the trial court struck Winchek's response as untimely and rendered a final summary judgment in favor of Amex. The trial court found that there was no genuine issue of material fact and that Amex was entitled to judgment for the sum of $36,675.17 and attorney's fees of $5,501.28.

On February 28, 2006, Winchek again moved for a new trial, which the trial court denied. This appeal ensued.

## Analysis

In what we construe as four issues, Winchek contends that the trial court erred by granting Amex's motion for summary judgment on its breach of contract claim because (1) Amex's summary judgment proof was insufficient to establish the existence of a contract and the damages sustained; (2) genuine issues of material fact preclude summary judgment; (3) Winchek's supplemental response was improperly stricken as untimely; and (4) Winchek's motion for continuance to depose Amex's summary judgment affiant was improperly denied.

### A. Standard of Review

We review a trial court's granting of a traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). A summary judgment under Rule of Civil Procedure 166a(c) is properly granted only when a movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. A plaintiff moving for summary judgment must prove that it is entitled to summary judgment as a matter of law on each element of its cause of action. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex.1999); *Rizkallah v. Conner*, 952 S.W.2d 580, 582 (Tex.App.-Houston [1st Dist.] 1997, no writ).

Only if the movant conclusively establishes its cause of action does the burden shift to the nonmovant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *Steel*, 997 S.W.2d at 222–23; *see Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989). In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and any doubts resolved in its favor. *Knott,* 128 S.W.3d at 215.

Here, because Winchek's burden to respond with evidence raising a genuine issue of material fact that would preclude summary judgment did not arise unless and until Amex met its burden to conclusively establish that it is entitled to summary judgment as a matter of law on each element of its cause of action, we first consider those of Winchek's issues that relate to whether Amex met its burden. *See Steel,* 997 S.W.2d at 222–23. Only if we determine that Amex met its burden do we consider Winchek's issues that relate to whether she met her burden to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *See id.*

When, as here, the trial court does not state the basis for its decision in its summary judgment order, we must uphold the order if any of the theories advanced is meritorious. *Knott,* 128 S.W.3d at 216.

## B. Applicable Law

To be entitled to summary judgment on its breach of contract claim, Amex was required to prove, as a matter of law, the essential elements of a breach of contract claim: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained as a result of the breach. *Prime Prod-*

*ucts, Inc. v. S.S.I. Plastics, Inc.,* 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

## C. Amex's Summary Judgment Proof

In her first issue, Winchek contends that Amex's summary judgment proof was insufficient to establish the existence of a contract and the damages sustained, the first and fourth elements of its cause of action.

### 1. *Existence of a Valid Contract*

■ Winchek contends that Amex failed to prove that a contract existed because it failed to prove that Amex delivered the Agreement to Winchek, that the Agreement contained definite terms, and that Winchek accepted those terms.

■ Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See id.* To be enforceable, a contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992).

As evidentiary support for its motion for summary judgment, Amex appended the affidavit of Axelrod, its Manager of Credit Operations and custodian of records. Axelrod attested that, "[a]t all relevant times, Winchek was the holder of an American Express Personal Card ("The Personal Card") that enabled her to charge items to an American Express Card Account (Number 3731 ...—the "Personal Account")" and that "[b]y accepting and using the Personal Card, Winchek agreed to all of the terms and conditions set forth in the

Personal Card Member Agreement with American Express."

The Agreement, which Amex also appended to its motion, stated that "when you keep, sign or use the enclosed American Express Card (including any renewal or replacement Cards issued to you) you agree to the terms of this Agreement." Pursuant to the Agreement, the holder of the Card was responsible for payment of amounts charged to the account. The Agreement provided that a billing statement would be mailed at the end of each billing period, that full payment was due immediately upon receipt of the billing statement, and that late fees may be charged if timely payment was not received. The amount of the late fees depended upon the length of time that an account remained unpaid and the address to which the bill was sent. The Agreement provided that Texas cardholders would be assessed a fee of 1.5% on amounts unpaid for two or more billing periods. In addition, late fees could be added as long as the account remained unpaid.

The Agreement also provided that for purchases made under the Sign and Travel, or deferred billing, feature, a minimum payment was due at the end of each billing cycle, as reflected in the billing statements. The minimum amount due would be the greater of $20 or 1/50th of the new balance shown on each statement, plus any previously unpaid minimum payments. The Agreement provided for finance charges, as follows:

> The daily periodic rate ("DPR") for Account charges depends on [the] adherence to the terms of this Agreement each month up to the 12–month period preceding each billing period (each such period being referred to as a "Review Period").... The DPR for Account charges is based on an [annual percent-age rate ("APR")] which may be adjusted monthly. The APR for all billing periods ending during any month is calculated by adding 9.9% to the "Prime Rate." ... Notwithstanding the foregoing, the APR will be a fixed rate of 23.46% with a DPR of .0643% in any review period (a) any portion of any Minimum Payment on [the] account was included within any unpaid previous balance on billing statements on three or more occasions, (b) any portion of any Minimum Payment on [the] Account was included within an unpaid previous balance on two consecutive billing statements, (c) [there is a] breach of the terms of any other American Express account, or (d) [the] Account is considered in default for any reason and/or is cancelled.... For purposes of this Agreement, the "Prime Rate" for billing periods ending in any month is the Prime Rate listed in *The Wall Street Journal* on the 15th day ... of the prior month.

The Agreement provided that the average daily method for calculating finance charges would be applied and explains the methodology.

In addition, Amex appended to its motion Winchek's billing statements for August, 2002, through August, 2003. The statements show that a specific Card and account number were issued to Winchek and that she used the Card to charge goods and services to her account under both the "due in full" and the "Sign and Travel" features. The statements reflect that Winchek was charged a DPR of 0.0657% (or an APR of 23.99%) on her "Sign and Travel" purchases. The statements reflect that each month, from August, 2002 through May, 2003, Winchek paid the total "due in full" amount and the minimum payment due on her Sign and Travel account. In June, 2003, Winchek

paid less than the total amount due on her account; and, in July and August, Winchek did not make payments.

■ First, Winchek contends that no contract exists because Amex failed to prove that it ever delivered the Agreement to her, citing *Awad Tex. Enters., Inc. v. Homart Dev. Co.,* 589 S.W.2d 817 (Tex.Civ. App.-Dallas 1979, no writ). Generally, delivery is essential to the validity of a contract. *Prime Products,* 97 S.W.3d at 636. However, as *Homart* points out, when the parties manifest an intent through their actions and words that the contract become effective, delivery is shown. *See Homart Dev. Co.,* 589 S.W.2d at 820 (holding that, because parties treated lease as effective upon execution and lessee moved in and paid rent, question of delivery of lease was "immaterial" to contract validity).

■ Here, as in *Homart,* Winchek's conduct in using the card and making payments on the account for the purchases and charges reflected on her monthly billing statements manifested her intent that the contract become effective. As Amex contends, a contract was created when Winchek used the Card, not upon manual delivery of the Agreement. *See id.* (stating that manual delivery is not essential to validity); *see e.g., Hay v. Citibank (South Dakota) N.A.,* No. 14–04–01131–CV, 2006 WL 2620089, at *3 (Tex.App.-Houston [14th Dist.] Sept. 14, 2006, no pet.) (holding that use of credit card and payments to account demonstrate existence of contract).

Second, Winchek contends that no contract was formed because the terms of the Agreement—apparently the type of account Winchek held and the applicable fees and finance charges—were fatally indefinite. The statements clearly show that all purchases were charged to one account number. The statements also clearly show which purchases were categorized as "due

in full" and which were deemed "Sign and Travel" and subject to finance charges. For the months reflected in the statements appended to Amex's motion, Winchek consistently paid the total amount of the "due in full" account and paid the minimum payment required by the deferred payment account. We conclude that Amex's evidence shows that the Agreement was sufficiently definite to enable a court to determine the rights and responsibilities of each party and that Winchek's conduct in using the card and making payments on the account for the purchases and charges reflected on her monthly billing statements shows that she understood her obligations to Amex and that a contract was formed. *See T.O. Stanley Boot Co.,* 847 S.W.2d at 221; *see also Hay,* 2006 WL 2620089, at *3 & n. 5.

Finally, Winchek contends that Amex failed to show proof of her acceptance of the terms of the Agreement. As the Agreement states, however, use of the Card constituted acceptance of the terms governing the use of the Card, as stated in the Agreement. Winchek does not dispute that she used the Card. In addition, Winchek made payments each month without ever disputing the accuracy of the statements or the stated terms.

We conclude that Amex met its burden to show the first element of its claim, that a contract existed between Amex and Winchek. *See Prime Products,* 97 S.W.3d at 636.

*2. Damages*

■ In addition, under her first issue, Winchek contends that Amex's summary judgment proof is insufficient to establish the damages sustained, the fourth element of its cause of action. Specifically, Winchek contends that Amex failed to establish the amount "that is owed and due,"

that all just and lawful offsets had been allowed, and the applicable rate of interest.

As fully discussed above, the Agreement and Winchek's statements provided detailed explanations of the cost of credit to Winchek and the methodology employed by Amex. As to the specific charges to Winchek, Winchek's billing statements for August, 2002 through August, 2003 show that Winchek used the Card to charge goods and services to her account under both the "due in full" and the "Sign and Travel" features. Contrary to Winchek's contention, the statements in the record before us do not reflect that interest was charged on the "due in full" transactions. The statements reflect that Winchek was charged a DPR of 0.0657% (or an APR of 23.99%) on her "Sign and Travel" purchases, and each statement contains a detailed explanation of the computation of the interest rate as applied to her account.

The statements reflect that each month, from August, 2002 through May, 2003, Winchek paid the total "due in full" amount and the minimum payment amount reflected on her Sign and Travel account. In June, 2003, Winchek paid less than the total amount due on her account; and, in July and August, no payments are reflected. The total outstanding balance owed, as reflected on the August 12, 2003 statement, was $33,995.96.

The record shows that Amex's affiant, Axelrod, attested that Amex duly sent monthly statements of account to Winchek, that each statement set forth in detail all the debits and credits to Winchek's account, and that each statement "reflected the total amounts due and owing by Winchek to [Amex]." Axelrod testified that Winchek breached "the Personal Card Agreement requiring payment in full of the balances due on the Personal Account" and that Winchek "has not made said payments to [Amex] with respect to the Per-

sonal Monthly Statements." Axelrod attested that the "total outstanding, overdue and unpaid balance owed by Winchek to [Amex] on the Personal Account [was] $36,675.17 as of May 31, 2005." Finally, Axelrod attested that this sum was after all payments and offsets had been made to Winchek's account by Amex.

Amex also appended the affidavit of Rhonda M. Ryemon, who attested that "a reasonable sum for attorney's fees in this case is 15% of the unpaid balance, which is the sum of $5,501.28, which is allowed under the Agreement." The Agreement states that if an unpaid account is referred to an attorney the cardholder agrees to pay "all court costs plus attorney's fees of 15% of the then unpaid balance."

We conclude that Amex met its burden to show the fourth element of its claim, the damages sustained by Winchek's breach. *See Prime Products,* 97 S.W.3d at 636.

### 3. *Competence of Axelrod Affidavit*

■ In a sub-issue, Winchek contends that Amex's summary judgment proof, the business records affidavit of Axelrod, was not competent to support summary judgment. Specifically, Winchek contends that the affidavit is conclusory and that Axelrod failed to show that the affidavit was made on personal knowledge, failed to set forth facts that would be admissible in evidence, and failed to show affirmatively that he was competent to testify to the matters stated.

Rule of Civil Procedure 166a(f) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex.R. Civ. P. 166a(f).

Here, the record shows that Axelrod attested in his affidavit that the facts he

sets out are based on his personal knowledge and that he derives his knowledge from 26 years of employment with Amex in the legal and collections units, his position as Manager of Credit Operations for Amex, and his personal familiarity with the policies and procedures Amex uses in creating and keeping records—which Axelrod discusses in great detail in his affidavit. Axelrod attested that he is personally responsible for the archived documents regarding accounts in active litigation, "especially high balance account holders such as ... Winchek."

Axelrod has satisfied the requirement that "affidavits shall be made on personal knowledge" because he has made an affirmative showing of how he became personally familiar with the facts. *Waite v. BancTexas—Houston, N.A.*, 792 S.W.2d 538, 540 (Tex.App.-Houston [1st Dist.] 1990, no writ). Axelrod's job responsibilities qualify him to have personal knowledge of the facts stated in the affidavit. *See id.*

Winchek also contends that Axelrod's affidavit is conclusory and fails to state any objective facts. Conclusory statements in affidavits are not competent evidence to support a summary judgment. *Rizkallah*, 952 S.W.2d at 587. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Id.* at 587. Winchek has not pointed to any specific language in Axelrod's affidavit to support her contention. The record shows that Axelrod attested that he is the custodian of records for Amex, that he bears the responsibility for archived documents regarding accounts in active litigation, and that he is required to have knowledge of the facts regarding high-balance account holders involved in litigation, such as Winchek. As stated in detail above, Axelrod attested to the facts regarding Winchek's account. We conclude that Ax-

elrod's affidavit was not conclusory. *See Choctaw Properties, L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 242–43 (Tex.App.-Waco 2003, no pet.). We further conclude that Axelrod's affidavit constituted competent summary judgment proof.

In sum, we have concluded that Amex met its burden to prove the first element of its claim, that a valid contract exists. The second and third elements, that of breach by Winchek and performance by Amex, are established because it is undisputed that Winchek failed to pay the amounts due as stated in the billing statements and that Amex fully performed its obligations with regard to servicing Winchek's account under the Agreement. Finally, we have concluded that Amex proved the fourth element of its claim, the damages sustained. We hold that Amex met its burden to prove that it is entitled to summary judgment as a matter of law on each element of its cause of action. *See Prime Products*, 97 S.W.3d at 636.

Accordingly, we overrule Winchek's first issue.

### D. Issue of Material Fact

Because Amex met its summary judgment burden, the burden shifted to Winchek to respond with evidence of a genuine issue of material fact that would preclude summary judgment. *See Steel*, 997 S.W.2d at 222–23.

#### 1. *Untimely Response*

In her second issue, Winchek contends that the trial court erroneously struck her supplemental response as untimely.

Except on leave of court, the nonmovant for summary judgment must file any response or opposing affidavits "not later than seven days prior to the day of the [summary judgment] hearing." Tex.R. Civ. P. 166a(c). Here, the record shows that Amex filed its motion for summary judgment on October 5, 2005, and a hear-

ing was set for December 30, 2005. Winchek's response was due by December 23, 2005. *See id.* Winchek did not file her response until 9:56 p.m. on December 27, 2005. Amex moved to strike the response as untimely, additionally contending that it had not received the response until the day of the hearing and that it had been unfairly surprised.

Winchek contended in the trial court that her response was timely filed on December 27, 2005 because it was her first opportunity to file. Winchek contended that "December 23, 2005 was a holiday [and] December 24 and 25 was a weekend." Winchek did not, however, contend in her response to Amex's motion to strike that December 26, 2005 was unavailable for filing, as she contends on appeal. Issues not presented to the trial court cannot be considered on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Gulf Ins. Co. v. Clarke*, 902 S.W.2d 156, 158 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

We conclude that Winchek failed to show that her motion, filed on December 27, 2005, less than three days prior to the hearing, was timely. *See* Tex.R. Civ. P. 166a(c).

Accordingly, Winchek's second issue is overruled.

### 2. *Issue of Material Fact*

In her third issue, Winchek contends that she raised genuine issues of material fact that preclude summary judgment. Specifically, Winchek contends that she filed an affidavit in which she "controvert[ed] the testimony of Axelrod and establishe[d] genuine issues of material fact." In her affidavit, Winchek attested that she did not receive the Agreement, that "she was charged an incorrect late fee," and that she was charged insurance premiums that she never agreed to pay.

Winchek's affidavit, however, was solely appended to and filed with her supplemental response, which the trial court struck as untimely. Having concluded that the trial court did not abuse its discretion in striking Winchek's supplemental response as untimely, we do not consider her affidavit in this appeal. *See* Tex.R. Civ. P. 166a(c); *City of Houston*, 589 S.W.2d at 678.

Accordingly, Winchek's third issue is overruled.

### 3. *Motion for Continuance*

In her fourth issue, Winchek contends that the trial court improperly denied her motion for a continuance to allow her to depose Amex's summary judgment affiant, Axelrod.

Winchek's motion for continuance was contained in her supplemental response, which we have already concluded was properly struck as untimely. However, even if we were to consider her issue, we note that Winchek's presentation of her contention is comprised of two sentences that do not contain any citations to the record or to authority. We will not decide an issue on appeal without proper argument and authority showing why the actions of the trial court were erroneous. *See* Tex.R.App. P. 38.1(h).

Accordingly, Winchek's fourth issue is overruled.

### CONCLUSION

We affirm the judgment of the trial court.