Affirmed and Memorandum Opinion filed October 11, 2007








Affirmed
and Memorandum Opinion filed October 11, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00653-CV

_______________

 

SIKANDER GHIA AKA GHIA SIKANDER, INDIVIDUALLY,
Appellant

 

V.

 

 

AMERICAN EXPRESS TRAVEL RELATED SERVICES, Appellee

                                                                                                                                         
      

On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 851,704

                                                                                                                                          
     

 

M E M O R A N D U M  O P I N I O N








Appellee,
American Express Travel Related Services, sued appellant, Sikander Ghia AKA
Ghia Sikander, to recover a credit card debt, alleging breach of contract and
alternatively, quantum meruit.  The trial court granted American Express=s motion for summary judgment and
entered a final judgment for $21,781.75, plus pre-judgment and post-judgment
interest, attorney=s fees, and costs.  In two issues, appellant contends
American Express failed to conclusively establish appellant=s liability and the damages awarded. 
All dispositive issues are settled in law.  Accordingly, we issue this
memorandum opinion and affirm. See Tex.
R. App. P. 47.4. 

I.  Standard of Review

A
plaintiff moving for summary-judgment must conclusively prove all essential
elements of its claim.  Cullins v. Foster, 171 S.W.3d 521, 530 (Tex.App.CHouston [14th Dist.] 2005, pet.
denied) (citing MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986)).  We
review a summary judgment de novo.  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  We take all evidence favorable to the
nonmovant as true and indulge every reasonable inference and resolve any doubts
in favor of the nonmovant.  Id.

II.  Summary Judgment Evidence

To
support its motion for summary judgment, American Express presented, inter
alia, an affidavit from Ed Garabedian, its custodian of records.  Garabedian
authenticated as Abusiness records@ a APlatinum Card7 Member Agreements@ (Athe agreement@) and some monthly statements for
appellant=s account, which were attached to the motion for summary judgment.  The
agreement contains various terms and conditions, including the card member=s obligation to pay all amounts
charged to the account.  

The
agreement includes a feature entitled, ASign & Travel7 and/or Extended Payment Option
Agreement.@  Pursuant to this feature, the card member may defer payments for
transactions of $200 or higher.  American Express is authorized to assess
finance charges on the deferred amounts.  The card member is required to remit
the minimum payment shown on each monthly account statement.  Further, the
account may be considered in default if the card member fails to make any
payment due.  In the event of a default, American Express may declare the
entire balance due and payable.








According
to the monthly statements, appellant made charges to her account, including
transactions subject to the ASign & Travel@ feature.  Appellant remitted some
payments, but she failed to make all minimum payments due.  Her last payment
was made in September 2004.  The most recent statement (December 2004) shows a
balance of $21,781.75, including transactions and finance charges, which is the
amount of the trial court=s judgment.  American Express also attached a demand letter
to its motion for summary judgment, reflecting it declared the balance due and
payable in December 2004.

III.  Discussion

In two
interrelated issues, appellant contends American Express failed to conclusively
establish her liability and the damages awarded.[1] 
American Express moved for summary judgment on its breach of contract claim.  The
elements of a breach of contract action are  (1) existence of a valid contract,
(2) performance or tendered performance by the plaintiff,  (3) breach of the
contract by the defendant, and (4) damages sustained by the plaintiff as a
result of the breach.  Roof Sys., Inc. v. Johns Manville Corp., 130
S.W.3d 430, 442 (Tex. App.CHouston [14th Dist.] 2004, no pet.).[2]








Preliminarily,
we note appellant presents several general complaints regarding Garabedian=s affidavit: American Express did not
provide sworn or certified copies of the documents referenced therein; the
affiant did not state the foundation for his opinions; the affidavit contains
legal conclusions unsupported by any facts; and the affiant failed to show how
he became familiar with the facts.  However, Garabedian properly authenticated
the referenced documents as Abusiness records@ pursuant to Texas Rule of Evidence
902(10).  See Tex. R. Evid. 902(10). 
Further, the affidavit did not contain any opinions or legal conclusions, but
merely statements of fact.  Finally, Garabedian averred the statements were
based on his personal knowledge, and as custodian of records, he testified
regarding pertinent information based on the account agreement and monthly
statements authenticated as business records and described the regular business
practices of American Express relative to the account agreement and monthly
statements. Therefore, we reject appellant=s general challenges to the
affidavit.

More
specifically, appellant claims American Express did not present sufficient
evidence to prove existence of a contract or its right to recover the damages
awarded.

A.        Existence of a Contract

The
elements of a valid contract are (1) an offer, (2) an acceptance in strict
compliance with the terms of the offer, (3) a meeting of the minds, (4) a
communication that each party consented to the terms of the contract, (5)
execution and delivery of the contract with an intent it become mutual and
binding on both parties, and (6) consideration.  Angelou v. African Overseas
Union, 33 S.W.3d 269, 278 (Tex. App.CHouston [14th Dist.] 2000, no pet.). 
For several reasons, appellant contends American Express failed to prove
existence of a valid contract.  

Appellant
suggests American Express did not establish the written agreement applied to
her account and that American Express owns the account.  Although appellant is
not specifically identified as a party on the form agreement, at the outset, it
includes the following language, AAgreement Between Platinum Card
Member and American Express Travel Related Services Company, Inc.@  The evidence demonstrates appellant
is a APlatinum Card@ holder.  Moreover, Garabedian
testified the agreement applies to appellant=s account.  Therefore, we reject
appellant=s contention.








Appellant
also argues American Express did not prove she accepted the terms of the
agreement.  However, the agreement provides, APlease read this Agreement
thoroughly, because when you keep, use or sign the enclosed Platinum Card (or
any renewal or replacement Card issued to you) you agree to the terms of the
Agreement. . . .@  Because appellant retained and used her card, she accepted
the terms of the agreement.  See Winchek v. Am. Express Travel
Related Servs. Co., Inc., 01-06-00392-CV, ___ S.W.3d ___ , 2007 WL 1440987,
at *6 (Tex. App.CHouston [1st Dist.] May 17, 2007, no pet.) (concluding
account holder=s use of credit card established her acceptance of account agreement
where it provided that use constituted acceptance of terms).

Similarly,
appellant contends American Express did not prove delivery of the agreement. 
To the contrary, Garabedian averred that it is the regular business practice of
American Express Ato send a copy of the applicable terms and conditions to the
Cardmember at the address to which the card and statements of account are sent
. . . .@  In response to the motion for
summary judgment, appellant did not present evidence negating receipt of the
agreement.  Moreover, when parties manifest an intent through their actions and
words that a contract become effective, manual delivery is immaterial to
contract validity.  Awad Tex. Enters., Inc. v. Homart Dev. Co., 589
S.W.2d 817, 819B20 (Tex. Civ. App.CDallas 1979, no writ).  Because
appellant used her card and made some payments due, she manifested intent that
the agreement become effective, irrespective of whether she received manual
delivery.  See Winchek, 2007 WL 1440987, at * 5 (holding account
holder=s conduct in using credit card and
making payments on account manifested intent the contract become effective,
irrespective of whether she received manual delivery of the agreement).

In
addition, appellant asserts the agreement did not have language indicating it
covered the relevant Atime frame that relief is sought.@  However, the agreement is not a
contract to be performed within a certain time frame.  Rather, appellant was
required to pay all charges on her account regardless of when they were
incurred.








Finally,
appellant generally claims the agreement is not definite.  See Fort
Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex.
2000) (holding that generally a contract is legally binding only if its terms
are sufficiently definite to enable a court to understand the parties= obligations).  But, appellant does
not explain how the agreement is allegedly indefinite.  Nonetheless, the
agreement contains nine pages and is quite specific regarding the parties= respective obligations.  Accordingly,
American Express proved that the agreement constituted a contract between
American Express and appellant.

B.        Damages

Appellant
offers numerous reasons that American Express allegedly failed to establish its
right to recover the damages awarded.

1.         Amount Due

First,
appellant generally asserts that American Express failed to establish Aan amount that is owed and due.@  It is unclear whether appellant
refers to the entire balance or some particular component. Regardless, the most
recent account statement shows a balance of $21,781.75Cthe amount of the judgment.  Thus, we
reject this general contention.[3]








Appellant
also suggests that proof of the amount due required expert testimony. We
disagree that proving a balance as reflected on an account statement requires
expert testimony.  Appellant then suggests the account statements are hearsay. 
However, the account statements are admissible as hearsay exceptions because
Garabedian properly authenticated them as business records.  See Tex. R. Evid. 803(6) (providing that
business records proved by affidavit complying with Rule of Evidence 902(10)
are admissible as exceptions to hearsay rule, unless source of information or
method or circumstances of preparation indicate lack of trustworthiness). 
Although appellant generally asserts the account statements lack Atrustworthiness,@ she presents no supporting argument.

Further,
appellant argues American Express failed to establish that all just and lawful
offsets have been allowed.  As appellant notes, Garabedian averred that the Apayment history attached to this
motion as Exhibit >E= show [sic] that [appellant] made the last payment on
__________ . . . .@  This blank is not completed, and Exhibit AE@ is an affidavit supporting attorney=s feesCnot a payment history.  However, the
payment history is not necessary to support the judgment.  The statements
reflect that the last payment was made on September 3, 2004.  Further, the
statements and American Express=s demand letter set forth the balance, and Garabedian averred
that Aall lawful offsets, payments, and
credits have been allowed.@  In response to the motion for summary judgment, appellant
did not present evidence of any payments that were not credited to her
account.  Consequently, American Express proved the balance after all payments
were credited, despite the absence of the referenced Apayment history.@

2.         Finance Charges








Next,
appellant challenges the award of finance charges comprising the balance. 
Appellant suggests American Express did not prove its right to assess any
finance charges.[4] Specifically,
appellant notes Garabedian averred that Exhibit AC@ attached to the motion for summary
judgment applied to appellant=s account.  According to appellant, there were two separate
agreements attached as exhibit AC@: the APlatinum Card7 Member Agreements@ and a ASign & Travel@ agreement.  Therefore, according to
appellant, Garabedian did not establish the ASign & Travel@ agreement, which authorizes finance
charges, applies to her account.  We  disagree.  It is clear that Exhibit AC@ referenced in the affidavit includes
the ASign & Travel@ option because the terms of that
feature begin in the middle of the third page of the APlatinum Card7 Member Agreements.@ 

Appellant
further notes that the ASign & Travel@ agreement provides that it is Anot available until the cardholder
receives notification from us.@  According to appellant, there is no proof she received the
requisite notice.  Again, we disagree.  As we have explained, Garabedian
testified American Express typically sends the terms and conditions comprising
the applicable agreement to the card member, and appellant presented no
evidence negating receipt of the agreement.  Moreover, the ASign & Travel@ agreement provides that the card
member agrees to the terms applicable to this feature by electing to use it. 
Accordingly, appellant agreed to pay finance charges on the amounts subject to
this feature by using the option.

 Apparently,
appellant next complains that American Express did not present evidence
specifically outlining each transaction to prove it was properly billed under
the ASign & Travel@ feature and thus was subject to
finance charges.  We recognize American Express did not present as summary
judgment evidence every monthly statement since inception of the account;
rather, it attached statements for 2004 only.  By January 2004, appellant had
accrued a significant portion of the ASign & Travel@ balance.  However, we conclude
American Express was not required to outline each transaction comprising this
balance.

Garabedian
testified that it is the regular business practice of American Express to send
monthly statements to the card member.  The agreement requires the card member
to contact American Express regarding any errors on a statement within sixty
days after the statement is issued.  The card member is not obligated to pay a
disputed amount during American Express=s investigation of the alleged
error.  However, the card member is obligated to pay the parts of the bill that
are not questioned.  








American
Express established the total balance on the ASign & Travel@ feature. In response to the motion
for summary judgment, appellant did not present evidence negating that she
received any monthly statements.  Further, appellant presented no evidence
showing she timely disputed any transactions comprising the ASign & Travel@ balance, or in particular, notified
American Express a transaction was improperly billed under this feature. 
Accordingly, by demonstrating the balance attributable to the ASign & Travel@ feature, American Express
sufficiently proved its right to recover the balance, including finance
charges, despite the absence of all statements itemizing the transactions.

Appellant
also contends American Express presented insufficient evidence to support the amount
of finance charges included in the balance.   In essence, the agreement
prescribes the following method for calculating finance charges: a daily
periodic rate (ADPR@) is applied to the AAverage Daily Balance@; the DPR is based on the annual
percentage rate (AAPR@) and may vary monthly; and the APR is determined by adding
9.99% to the Prime Rate.[5]








Appellant
contends American Express offered no evidence regarding the applicable prime
rate used to determine the APR.  Appellant cites an unpublished opinion, Hay
v. Citibank (South Dakota) N.A., in which we held that the plaintiff bank
did not present sufficient summary judgment evidence to support the finance
charges awarded on a credit card debt.  No. 14-04-01131-CV, 2006 WL 2620089, at
*3 (Tex. App.CHouston [14th Dist.] Sept. 14, 2006, no pet.) (mem. op.).  Notably, the
agreement authorized a default rate of up to 19.99% plus the applicable prime
rate.  Id.  But, the bank did not present any evidence of the applicable
prime rate for the relevant time periods covered by the statements.  Id. 
The bank argued the default rate reflected on some statements minus the 19.99%
factor indicated the applicable prime rate.  Id.  We held that this
default rate reflected the prime rate used, but the bank did not
establish Awhat the applicable prime rate for any date or time period actually was,
such as by reference to a source of that information.@  Id.

In
contrast, here, the agreement specifically refers to a source by providing that
the Prime Rate is to be determined from The Wall Street Journal.  Moreover, the
2004 account statements include a detailed description regarding American
Express=s calculation of finance charges and
indicate it indeed used the prime rate published in The Wall Street Journal.[6] 
Again, the record does not include statements prior to 2004 and thus does not
show how American Express calculated finance charges for previous years. 
However, as we have explained, in response to the summary judgment, appellant
offered no evidence showing that she timely disputed the calculation of any
finances charges on her monthly statements.  Accordingly, by demonstrating the
balance attributable to the ASign & Travel@ feature, American Express
sufficiently proved its right to recover the portion constituting finance
charges.








Finally,
appellant argues that American Express assessed a Adefault@ APR in excess of the rate authorized
by the agreement.  On the November and December 2004 statements, American
Express applied Adefault@ rates of 26.74% and 26.99% respectively.  As appellant
asserts, the agreement prescribes a fixed APR of  23.46% in the event of a
default.  However, the agreement also provides that American Express may change
the terms, including finance charge rates, at any time and will notify the card
member of the changes.  Through a notice attached to the March 2004 account
statement, American Express modified the agreement to prescribe a variable Adefault@ APR equal to the Prime Rate plus
21.99%.  The November and December 2004 statements indicate American Express
used the Prime Rate published in The Wall Street Journal to calculate the Adefault@ APR.  Consequently, American Express
applied a default APR authorized by the agreement.

3.         Service Charges, Late
Fees, and AOther Charges@

In her
second stated issue, appellant asserts that American Express failed to
establish the right to recover Aservice charges,@ late fees, and Aother charges.@  Appellant has waived this
contention by failing to present any argument and specify the charges to which
she refers.  See Tex. R. App. P.
38.1(h) (providing that appellant=s brief must contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and the record); Blanks v. Liberty Mut. Fire Ins. Co., 196
S.W.3d 451, 452 (Tex. App.CDallas 2006, pet. denied) (recognizing bare assertions of
error, without argument or authority, waive error).  Nevertheless, under the
agreement, American Express is specifically authorized to assess late fees for
unpaid charges.

C.        Attorney=s Fees

Finally,
in her second stated issue, appellant asserts American Express failed to
establish its right to recover attorney=s fees.  However, in her argument,
appellant challenges recovery of attorney=s fees only with respect to American
Express=s alternative quantum meruit claim. 
American Express may recover attorney=s fees because it prevailed on its
breach of contract claim and recovered damages.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 1997); see Gentry
v. Squires Const., Inc., 188 S.W.3d 396, 406 (Tex. App.CDallas 2006, no pet.).

In sum,
American Express conclusively established existence of a contract and the
damages caused by appellant=s breach.  Therefore, the trial court did not err by granting
summary judgment in favor of American Express.  Accordingly, we overrule
appellant=s two 

 








issues and affirm the
judgment.

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and
Memorandum Opinion filed October 11, 2007.

Panel consists of
Justices Yates, Seymore, and Edelman.*

 

 

 

 

 

 

 









[1]  Appellant=s
complaints are not exactly clear.  In her first stated issue, she generally
asserts American Express did not proffer competent evidence to support a
judgment for breach of contract or quantum meruit.  In her second stated issue,
for various reasons, she challenges the damages awarded.  In the AFacts@ section of her
brief, she lists challenges to the summary judgment that are not exactly
consistent with her stated issues.  Then, throughout her argument, she scatters
various challenges to the summary judgment.  We have attempted to glean, and
address, the complaints on which she presented some argument.





[2]  Because we conclude American Express established its
breach-of-contract claim, we need not address appellant=s challenge to summary judgment on American Express=s alternative quantum meruit theory.  See Vortt
Exploration  Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990) (recognizing
that generally party may recover in quantum meruit only when there is no
express contract covering the services or materials furnished).





[3]  As appellant notes, in his affidavit, Garabedian
incorrectly averred that the account statements show a balance of
$21,811.27, when they actually reflect a balance of $21,781.75.  However,
American Express also presented a document indicating several ADebit Adjustment[s]@
were added in 2005, bringing the balance to $21,811.27.  Nonetheless, the trial
court entered judgment for $21,781.75, as shown on the account statements. 
Therefore, Garabedian=s mistake as to the source of the slightly higher
balance  referenced in his affidavit is immaterial.





[4]  Although appellant refers to Ainterest,@ it
is apparent she challenges the finance charges included in the balance, as
opposed to the award of pre-judgment and post-judgment interest.





[5]  We note that the agreement prescribes this method
for calculating the DPR and APR A[e]xcept
as provided in Section B below.@  Curiously,
there is no provision entitled, ASection
B,@ although, as we will explain, there is an exception
for determining the APR in the event of a Adefault.@  In fact, relying on this omission, appellant asserts
the formula prescribed in the agreement is incomplete.  However, because there
is no ASection B,@
the agreement effectively contains no exception to the cited formula, other
than the default provision.  Therefore, we conclude that the above-cited
formula is applicable.





[6]  Beneath the APR shown on the account statements is
the following language: ACertain of the periodic rates and APRs above may be
variable.  Those rates may vary based upon the prime rate identified in the
Wall Street Journal, as described in your Cardmember Agreement as currently in
effect.@





* 
Senior Justice Richard H. Edelman sitting by assignment.