# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00677-CV

**Shawn C. Taylor, Appellant**

**v.**

**Discover Bank, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 16-0379-CC2, HONORABLE LAURA B. BARKER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Shawn C. Taylor appeals from the trial court's order granting summary judgment in favor of appellee Discover Bank in its suit for breach of contract. In four issues, Taylor argues that the trial court should have excluded altogether an affidavit attached as evidence to the Bank's motion for summary judgment; that the affidavit presented only unsupported factual conclusions; that the evidence was insufficient; and that there was no evidence he had accepted the contract. We will affirm the trial court's order.

## Discussion

We review the trial court's granting of summary judgment de novo but review for an abuse of discretion the court's decisions related to the admission or exclusion of evidence. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). We thus first ask whether in refusing to

strike the Bank's affidavit, the trial court abused its discretion by acting without reference to any guiding rules and principles. *See id.*

The Bank sued Taylor for breach of written contract, asserting that Taylor owed $12,547.98 on his credit card account with the Bank. It moved for summary judgment, presenting as evidence an affidavit by Vilanthe Williams, a Litigation Support Specialist for the Bank. Williams averred that her affidavit was "made on the basis of [her] personal knowledge"; that she had knowledge about and access to the Bank's records; that the Bank maintained those records in the ordinary course of its business; that she had "personally inspected the records pertaining to" Taylor; that the Bank had sent Taylor monthly statements; and that Taylor had not paid the amounts due and thus was in default. Williams attached as exhibits a copy of the Cardmember Agreement governing Taylor's credit card account; the last statement sent to Taylor; and "a true and accurate copy of information retrieved from [the Bank's] record-keeping system that shows the current balance due and owing" on Taylor's account. She concluded, "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge."

In his first issue Taylor argues that Williams's affidavit is inadmissible summary judgment evidence because of the statement, "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge." He points to cases holding that an affidavit cannot support summary judgment if it is based on anything other than personal knowledge. *See, e.g.*, *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (affiant swore that facts were "true and correct to the best of my personal knowledge and belief," did not show that facts were based on her personal knowledge, and recited hearsay); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.

2

1996) ("An interested witness' affidavit which recites that the affiant 'estimates,' or 'believes' certain facts to be true will not support summary judgment.").

However, Williams's affidavit does not simply state that she "believes" the recited facts to be true. Her affidavit opens with the unequivocal statement that it is "made on the basis of my personal knowledge," states that Williams had knowledge of and access to the Bank's records related to Taylor's account, states that she personally inspected those records, and explains that the Bank's records are kept in the ordinary course of its business. The inclusion of the phrase "to the best of my knowledge" does not negate Williams's earlier assertion that the affidavit was based on her personal knowledge and her personal review of the relevant records. *See Martinez v. Dolgencorp of Tex., Inc.*, No. 13-17-00425-CV, 2018 WL 3062610, at *5 (Tex. App.—Corpus Christi June 21, 2018, no pet.) (mem. op.) (noting that "affidavit may be sufficient if sworn to the phrase 'to the best of my knowledge' if the statements within the affidavit demonstrate the basis for the affiant's personal knowledge" but holding that affidavit did not affirmatively show that affiant was testifying from personal knowledge); *Ermisch v. HSBC Bank USA*, No. 03-16-00080-CV, 2016 WL 6575232, at *3 (Tex. App.—Austin Nov. 4, 2016, pet. denied) (mem. op.) (affidavit was sufficient despite lack of explicit statement that facts were true and correct because affiant explicitly stated she had personal knowledge of facts; "the trial court could have reasonably determined that Vaughn's affidavit demonstrated she was testifying based on personal knowledge and the 'obvious effect' of her testimony regarding her role as custodian of records was that her statements were true and correct"); *Shaheen v. Motion Indus., Inc.*, 880 S.W.2d 88, 91 n.1 (Tex. App.—Corpus Christi 1994, writ denied) (affidavit was sufficient despite being sworn as "true and correct to the best of

3

my knowledge" because "statements within the affidavit demonstrate the basis for Shaheen's personal knowledge"). We hold that considering the affidavit as a whole, the trial court did not abuse its discretion in determining that her affidavit sufficiently established that she had knowledge of the averred facts and that she was competent to testify as to those facts. *See* Tex. R. Civ. P. 166a(f). We overrule Taylor's first issue on appeal.

In his second issue, Taylor argues that the affidavit testimony was "an unsupported factual conclusion" because the credit card statements attached as exhibits showed only a balance owed and did not show purchases, cash advances, balance transfers, payments, credits, or other use. Taylor argues that Williams's statement that Taylor had not paid "the amounts due and owing to Discover on the account" was an unsupported factual and legal conclusion because the statements "do not contain sufficient information from which a witness could make this determination." He further contends that because the statements only show an ongoing and increasing balance, not purchases, balance transfers, or other use, they are "conclusory, mere allegations, and testimony based on these statements is likewise conclusory and unsupported."

Williams averred that the Bank's "record-keeping systems contain information about which version of Discover Bank's terms and conditions has been communicated to an account holder and accepted by an account holder through the use of his or her Discover Card after receipt of the terms and conditions." Her affidavit goes on to substantially comply with the requirements for a business-records affidavit. *See* Tex. R. Evid. 902(10)(B). Williams attached to her affidavit a copy of the "Cardmember Agreement" that she stated governed Taylor's account. The Agreement provides, "You accept this Agreement if you do not cancel your Account within 30 days after

4

receiving a Card. You also accept this Agreement if you or an Authorized User use the Account." Under the Agreement, the card holder was responsible for payment of "all amounts due on your Account," a billing statement would be mailed at the end of each billing period, and the card holder was responsible for paying at least the minimum payment by the due date shown on the statement. The Agreement set out how and when interest and late fees would be charged and explained that variable annual percentage rates ("APRs") might apply, that the variable APRs were determined by "adding the number of percentage points that we specify to the Prime Rate" as published in the Wall Street Journal, and that a penalty rate of "5 additional percentage points [added] to the otherwise applicable APR" would be assessed each time the card holder did not make a minimum payment.

In addition, Williams attached monthly statements for Taylor's account for the billing periods of February 21, 2015 through March 20, 2015; March 21, 2015 through April 20, 2015; April 21, 2015 through May 20, 2015; May 21, 2015 through June 20, 2015; June 21, 2015 through July 20, 2015; and July 21, 2015 through August 20, 2015. Those statements reflect that Taylor did not use the card to make any charges in that time period and that his balance grew from $12,090.89 to $12,549.10 due to accrued interest and late fees. The monthly statements explain the interest rates charged to Taylor's account, specifying that $8,024.29 was subject to a 0.00% "balance-transfers" interest rate, that about $1,200 was subject to a 7.99% balance-transfers interest rate, and that about $3,000 was subject to a 13.24% "purchases" interest rate.[1] Williams also attached a final statement for the period of September 1, 2015 through September 15, 2015; that statement reflects a final

---

[1] The earliest statement, from March 2015, shows $2,857.52 subject to the purchases interest rate and $1,226.65 subject to the 7.99% balance-transfers interest rate. By the last statement, from August 2015, those balances had increased to $3,198.81 and $1,267.95, respectively.

balance of $12,547.98, does not show any interest or late fees, and reflects a $1.12 credit for a "cashback bonus award adjustment."

Williams explained how the Bank's systems track a card holder's credit card usage and generate monthly billing statements based on that activity. She stated that she had personally inspected the records related to Taylor's account to ascertain the balance owed and whether he had made any payments. Further, she averred that the statements attached as exhibits were true and accurate copies and showed the current balance due and owing on Taylor's account.[2] Finally, the Cardmember Agreement and each monthly statement explain that if a card holder believes there is an error on a statement, he must notify the Bank within sixty days.

The monthly statements reflect that Taylor at some point made approximately $3,000 in purchases and approximately $9,200 in balance transfers. Although it might be preferable for the Bank to have provided statements showing when Taylor made those purchases and balance transfers, the information provided in the statements provided a sufficient factual basis for Williams's averment that the September 15 statement showed the current balance owed by Taylor. The exhibits attached to Williams's affidavit provided sufficient underlying facts to support the statements made in her affidavit, and her affidavit was admissible summary judgment evidence and not conclusory. *See Damron v. Citibank (S.D.) N.A.*, No. 03-09-00438-CV, 2010 WL 3377777, at *4 (Tex. App.—Austin Aug. 25, 2010, pet. denied) (mem. op.); *McFarland v. Citibank (S.D.), N.A.*,

---

[2] Taylor asserts that Exhibit C, to which Williams refers in her affidavit, was not attached. However, the clerk's record on file in this Court includes Exhibit C, which consists of the September 1 through September 15 statement and five earlier monthly statements covering the billing periods from February 21 through June 21.

6

293 S.W.3d 759, 762-63 (Tex. App.—Waco 2009, no pet.); *see also Sprayberry v. Siesta MHC Income Partners, L.P.*, No. 03-08-00649-CV, 2010 WL 1404598, at *4 (Tex. App.—Austin Apr. 8, 2010, no pet.) (mem. op.) (affidavit is conclusory if it consists only of factual or legal conclusions or opinions unsupported by facts; summary-judgment affidavit must "contain specific factual bases, admissible in evidence, upon which its conclusions are based"); *Price v. American Nat'l Ins. Co.*, 113 S.W.3d 424, 429 (Tex. App.—Houston [1st Dist] 2003, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion.").

Having concluded that the trial court did not abuse its discretion in considering Williams's affidavit, we now turn to Taylor's third and fourth issues, which complain of the sufficiency of the evidence. Taylor argues (1) that the evidence was insufficient because the statements attached as evidence did not show purchases, cash advances, balance transfers, payments, credits, or other use, and (2) that the lack of evidence showing his use of the card meant there was no evidence that he had accepted the contract. Taylor does not assert that he presented evidence raising a fact issue in response to the Bank's motion; he asserts only that the Bank did not carry its burden of establishing its entitlement to judgment as a matter of law.

To be entitled to summary judgment for breach of contract, the Bank had to prove as a matter of law: (1) the existence of a valid contract; (2) performance or tendered performance by the Bank; (3) breach of the contract by Taylor; and (4) damages sustained as a result of his breach. *See Winchek v. American Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Although the Bank could certainly have been more thorough in its proffer of evidence, the evidence presented here is not as slight as in *Ayers v. Target*

7

*National Bank*, on which Taylor relies. No. 14-11-00574-CV, 2012 WL 3043043 (Tex. App.—Houston [14th Dist.] July 26, 2012, no pet.) (mem. op.). In that case, Target provided an affidavit stating that the representative had reviewed Ayers's records and that she owed a certain sum to Target and attaching a single monthly statement showing a carried-over balance and no further activity. *Id*. at *2-3.

Here, by contrast, the Bank proffered the Cardmember Agreement, and Williams averred that those were the applicable terms and conditions and that such terms and conditions were "communicated to an account holder and accepted by an account holder through the use of his or her Discover Card."[3] The Agreement explicitly stated that by using the credit card, a cardholder accepted the Cardmember Agreement, and the statements showed that Taylor had used the card to make purchases and balance transfers. The statements further explained how the interest and late fees were calculated and assessed, as governed by the Agreement. The Bank established as a matter

---

[3] *Compare Winchek v. American Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202-03 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (card issuer established contract by proffering card member agreement, which explained applicable terms and conditions, including provision that card holder agreed to cardmember agreement when she used credit card), *and Ghia v. American Express Travel Related Servs.*, No. 14-06-00653-CV, 2007 WL 2990295, at *2-3 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet.) (mem. op.) (card issuer established existence of contract by providing cardmember agreement, which specified that card holder accepted terms of agreement by use of credit card, and affidavit, which explained that issuer's usual business practice was to deliver agreement to card holder; card holder used card and did not negate receipt of agreement), *with McElroy v. Unifund CCR Partners*, No. 14-07-00661-CV, 2008 WL 4355276, at *4 (Tex. App.—Houston [14th Dist.] Aug. 26, 2008, no pet.) (mem. op.) (creditor "did not proffer the actual agreement between the cardholder and the issuer" or any "express written agreement describing the definite, agreed terms" between the parties; without evidence of specific contract terms, creditor did not establish existence of contract), *and Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (creditor did not produce agreement between card holder and card issuer or "any other document that established the agreed terms" and thus did not establish existence of contract).

of law that a contract existed and that the Bank performed under the contract. *See Winchek*, 232 S.W.3d at 202.

The Bank provided evidence that Taylor owed the Bank $12,547.98 due to his acceptance and subsequent use of the card. In his response to the Bank's motion for summary judgment, Taylor did not provide evidence that might cast doubt on the veracity of the amounts reflected by the Bank's evidence or any other evidence, such as an affidavit asserting that information in the statements was incorrect or evidence that he ever informed the Bank about errors in his statements. The Bank established as a matter of law that Taylor breached the contract by failing to pay the amount due on the credit card, causing the Bank $12,547.98 in damages.[4] *See id.* We overrule Taylor's third and fourth issues.

## Conclusion

Having overruled Taylor's issues on appeal, we affirm the trial court's order granting summary judgment in favor of the Bank.

---

[4] Another case relied on by Taylor, *Morrison v. Citibank (South Dakota) N.A.*, involves a different cause of action—account stated—with different elements. No. 02-07-00130-CV, 2008 WL 553284 (Tex. App.—Fort Worth Feb. 28, 2008, no pet.) (mem. op.). In that case, the court stated:

> the evidence is fatally weak on the second element of account stated ("an agreement, express or implied, between the parties fix[ing] an amount due"). The statements show that, when she was making payments, Morrison regularly paid only a fraction of the full balance claimed to be due. Further, Morrison's failure to dispute the final statements, combined with the trial court's finding that Citibank did not know whether Morrison received the statements, is very weak evidence on the question of whether she "agreed" to pay the amount claimed in the final statements.

*Id.* at *3. Because the causes of action are different, the discussion in *Morrison* is not helpful here.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   August 23, 2018