Affirmed and Memorandum Opinion filed March 30, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00939-CV

___________________

 

Jesus Jaramillo, SR., Appellant

 

V.

 

Portfolio Acquisitions, LLC,
Appellee



 



 

On
Appeal from the County Court at Law Number 1

Fort Bend County,
Texas



Trial Court Cause No. 07-CCV-033789

 



 

 

MEMORANDUM  OPINION

            Appellant,
Jesus Jaramillo, Sr., appeals a judgment in favor of appellee, Portfolio
Acquisitions, LLC, for an unpaid credit card debt.  On appeal, appellant argues:
(1) the trial court erred in issuing untimely findings of fact and conclusions
of law; (2) the evidence is insufficient to support appellee’s standing as an
assignee of the credit card account; (3) the evidence is insufficient to establish
the existence of a valid contract; (4) the trial court erred in granting
judgment on causes of action not allowed by law; (5) the trial court erred in
granting attorney’s fees; and (6) the trial court erred in denying appellant’s
counterclaims based on the Fair Debt Collection Practices Act.  We affirm. 

Factual and Procedural Background

            Appellee
sued appellant to recover unpaid debt on a credit card account.  The account
was originally issued by HSBC bank and later acquired by appellee by assignment. 
Appellee pleaded suit on an open and stated account, breach of contract, and
quantum meruit.  Appellant responded with a general denial and asserted
counterclaims based on violations of the Fair Debt Collection Practices Act. 
The lawsuit was tried to the court.

            The
evidence shows appellant opened a credit card account with HSBC in October
2003.  According to the affidavit of HSBC’s records custodian, appellant
applied for the account online and, consequently, there is no physical copy of
appellant’s application.  Appellant testified he used the credit card to
purchase personal and family items.  Appellant explained he stopped paying on
the account because he could not afford to pay the debt he owed on the account.

            At
the bench trial, Kim Jordan testified that she is a senior client service
manager for OSI Collection Services (OSI).  She explained OSI purchased
appellee Portfolio Acquisitions, LLC, and that the two are sister companies.  According
to Jordan, OSI purchased appellant’s account from HSBC and, on the same day,
sold the account to appellee.  In addition to Jordan’s testimony, these transactions
were also established at trial by two bills of sale: one from HSBC to OSI and
another from OSI to appellee.  Jordan confirmed these bills of sale represented
the sale of appellant’s account to appellee. 

            Additionally,
during the bench trial, appellee entered into evidence, over appellant’s
objection, a credit card agreement alleged to control appellant’s account.  Jordan
testified the agreement provided by appellee is the agreement controlling
appellant’s credit card.  Appellee also entered into evidence account
statements that had been issued to appellant.  These statements reflect
purchases and payments appellant made on the account.  The statements contain
the daily periodic rate, finance charges at the periodic rate, and the nominal
annual percentage rate—these rates varied widely from statement to statement.  In
an affidavit, HSBC’s records custodian, Latrese Walker, attested to the
validity of some the account statements. 

            The
trial court signed a judgment in favor of appellee for $1,258.45, plus interest
and $6,000.00 in attorney’s fees, plus interest.  Appellant submitted proposed
findings of fact and conclusions of law, which the judge signed.  Months later,
after appellee submitted proposed findings, the trial court vacated its
original findings (the ones originally submitted by appellant) and signed appellee’s
proposed findings.  Appellant timely appealed.   

Discussion

I.         Findings
of Fact and Conclusions of Law

            In
his first issue, appellant contends the trial court erred by filing findings of
fact and conclusions of law more than twenty days after filing the original
findings.  The trial court signed its final judgment on September 10, 2008. 
Appellant submitted proposed findings of fact and conclusions of law on
September 29, 2008.  On October 6, 2008, the trial court signed appellant’s
proposed findings of fact and conclusions of law.  On October 24, 2008,
appellee filed proposed findings of fact and conclusions of law.  On January 5,
2009, the trial court vacated the October 6 findings and signed appellee’s October
24 proposed findings of fact and conclusions of law.  Appellant contends the
trial court signed appellee’s findings of fact and conclusions of law in
violation of Texas Rule of Civil Procedure 298, which provides: 

[a]fter the court files original findings of fact and
conclusions of law, any party may file with the clerk of the court a request
for specified additional or amended findings or conclusion.  The request for
these findings shall be made within ten days after the filing of the original
findings and conclusions by the court. . . .The court shall file any additional
or amended findings and conclusions that are appropriate within ten days after
such request is filed[.]

Tex. R. Civ.
P. 298.  Appellant contends appellee was required to file his request no later
than October 16, 2008 and that the court had to file any additional or amended
findings no later than October 26, 2008.  Consequently, appellant argues, the
trial court signed appellee’s findings in error and, therefore, they must be
disregarded. 

            Rule
298 does not preclude the trial court from issuing belated findings and
conclusions; rather, it sets time limits for requesting and filing so that a
litigant or trial judge may avoid the consequences of noncompliance.  Morrison
v. Morrison, 713 S.W.2d 377, 380–81 (Tex. App.—Dallas 1986, writ dism’d).  These
consequences are: (1) if a litigant fails to timely request additional findings
in compliance with rule 298, he waives his right to complain of the trial
court’s refusal to make designated findings and conclusions, and (2) if a judge
files belated findings and the litigant can show injury, such as not being able
to adequately present his appeal, then the appellate court may abate the appeal
and order the judge to consider the required additional findings.  Id.
at 381.  Thus, when a court files belated findings the only issue that arises
is the injury to the appellant, not the trial court’s jurisdiction to make the
findings.  Jefferson Cty. Drainage Dist. v. Lower Neches Valley Auth.,
876 S.W.2d 940, 959 (Tex. App.—Beaumont 1994, writ denied).  Furthermore, the
expiration of the trial court’s plenary power does not affect or diminish the
trial court’s ability to make and file amended findings of fact and conclusions
of law.  In re Gillespie, 124 S.W.3d 699, 703 (Tex. App.—Houston [14th
Dist.] 2003, no pet.).  

            Appellant
failed to demonstrate injury suffered from the belated findings.  Consequently,
we hold the findings of fact and conclusions of law signed on January 5, 2009 are
valid.  See Jefferson Cty. Drainage Dist., 876 S.W.2d at 959–60 (holding
the trial court’s untimely findings and conclusions remained valid where appellant
failed to demonstrate harm).  Appellant’s first issue is overruled.  

II.        Legal
Sufficiency 

            In
issues two through six, appellant challenges the legal sufficiency of the
evidence.  In his second issue, appellant contends the evidence is insufficient
to support appellee’s standing to bring suit.  In issues three through six,
appellant contends the evidence is insufficient to establish the existence of a
valid contract.   

            

A.        Standard
of Review

            When
reviewing a no evidence or legal sufficiency challenge, we review the evidence
in the light most favorable to the challenged finding and indulge every
reasonable inference that would support it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable
fact finder could, and disregard contrary evidence unless a reasonable fact
finder could not.  Id.  The evidence is legally sufficient if it would
enable fair-minded people to reach the same verdict under review.  Id.
at 827.  The trier of fact is the sole judge of the witnesses’ credibility and
the weight to be given their testimony.  Id. at 819.  This court cannot
substitute its judgment for that of the jury, so long as the evidence falls
within the zone of reasonable disagreement.  Id. at 822.  But if the
evidence allows only one inference, neither jurors nor the reviewing court may
disregard it.  Id.    

                        1.         Standing

            Appellant
contends there is no evidence that appellee owns appellant’s HSBC account or
debt originating from such account.  We construe this as a challenge to the legal
sufficiency of the evidence supporting appellee’s standing to bring suit
against appellant based on the account at issue.  

                                    a.         Applicable
Law

            Standing,
a necessary component of subject-matter jurisdiction, is a constitutional prerequisite
to maintaining a suit under Texas law.  Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 444–45 (Tex. 1993).  Standing cannot be waived
and can, therefore, be raised for the first time on appeal.  Id. at
445–46.  Whether a party has standing to pursue a claim is a question of law
reviewed de novo.  Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998).

            Standing
is a party’s justiciable interest in a controversy.  See Nootsie, Ltd. v.
Williamson County Appraisal Dist., 925 S.W.2d 659, 661–62 (Tex. 1996). 
Only the party whose primary legal right has been breached may seek redress for
an injury.  Nauslar v. Coors Brewing Co., 170 S.W.3d 242, 249 (Tex.
App.—Dallas 2005, no pet.).  Without a breach of a legal right belonging to that
party, that party has no standing to litigate.  Cadle Co. v. Lobingier,
50 S.W.3d 662, 669–70 (Tex. App.—Fort Worth 2001, pet. denied).  In reviewing
standing on appeal, we construe the petition in favor of the plaintiff, and if
necessary, review the entire record to determine if any evidence supports
standing.  See Air Control, 852 S.W.2d at 446.

                                    b.         Analysis

            It
is undisputed appellant had a credit card account with HSBC.  In its original
petition, appellee alleged that it is the owner of the indebtedness arising
from the credit extension.  During trial, Kim Jordan testified she worked for
OSI Collection Services, the company that purchased appellee.  Jordan confirmed
two bills of sale entered into evidence represented the sale of appellant’s
HSBC account from HSBC to OSI and subsequently to appellee.  The bill of sale
from OSI to appellee referenced the account subject to the sale as being
described in the attached “Appendix A”.  The bill of sale entered into evidence
did not contain an attached “Appendix A”.  Following the two bills of sale
entered into evidence was a spreadsheet displaying appellant’s name, contact
information, HSBC account number, account information, and the amount owed on
the account.  Appellant contends because there is no document titled “Appendix
A” attached to the bills of sale, the evidence is insufficient to prove his
account was assigned to appellee.  We disagree. 

            Jordan’s
testimony served to link the bills of sale to the attached spreadsheet
referencing appellant’s account.            Viewing the evidence in the light
most favorable to the challenged finding, we hold the bills of sale combined
with Jordan’s testimony sufficient evidence that appellee owns the account at
issue.  See Eaves v. Unifund CCR Partners, 301 S.W.3d 402, 405 (Tex.
App.—El Paso 2009, no pet.).  Because appellee owns the account at issue, it is
the party with the right to seek redress for appellant’s alleged failure to pay
his debt on the account.  Therefore, appellee has standing to bring suit on
such account against appellant.  See Nauslar, 170 S.W.3d at 429.  Appellant’s
second issue is overruled.  
                        2.         Existence of a Valid Contract

            In
four issues, appellant contends there is no evidence supporting the existence
of an agreement between appellee’s predecessor, HSBC, and appellant.  Appellant
argues there is no evidence of a contract, no evidence of definite terms and
conditions of the alleged contract, no evidence of agreed upon finance charges
or interest rates in the alleged contract, no evidence of agreed upon late fees
or over-the-limit fees in the alleged contract, and no evidence as to how the
finance charges and final balance were calculated under the alleged contract. 
Without evidence of the contract and its terms, appellant contends, there can
be no breach of the alleged contract.  We review appellant’s no evidence
challenge as a challenge to the legal sufficiency of the evidence.  

                                    a.         Applicable
Law

            Parties
form a binding contract when the following elements are present: (1) an offer,
(2) an acceptance in strict compliance with the terms of the offer, (3) meeting
of the minds, (4) each party’s mutual consent to the terms, and (5) execution
and delivery of the contract with the intent that it be mutual and binding.  Prime
Products, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). To be enforceable, a contract must
be sufficiently certain to enable a court to determine the rights and
responsibilities of the parties.  T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 221 (Tex. 1992).

                                    b.         Analysis

            The
evidence shows appellant applied for an account online with HSBC, used the
account to purchase goods and services, made payments on the account, but failed
to pay off his final balance.  The evidence offered by appellee to prove the
existence of a contract consists of: (1) an affidavit of HSBC’s records
custodian Latrese Walker, attesting to the validity of billing statements sent
to appellant from June 24, 2004 through August 25, 2004; (2) billing statements
mailed to appellant between April 2004 and November 2005 reflecting widely
varying interest rates; (3) an unsigned and undated “Generic Cardmember
Agreement and Disclosure Statement”; (4) a check written by appellant to make a
payment on his credit card account; (5) a printout of a computer screen
displaying appellant’s account information; and (6) the testimony of OSI
representative Kim Jordan stating the generic card member agreement entered
into evidence is the contract that controls appellant’s particular credit card.

            In
McElroy v. Unifund CCR, a similar credit card debt collection case, this
court held the evidence was insufficient to support the existence of a valid
contract.  McElroy v. Unifund CCR Partners, 2008 WL 4355276 (Tex. App.—Houston
[14th Dist.] Aug. 26, 2008, no pet.) (mem. op.).  In McElroy, the
creditor’s evidence supporting a contract consisted of: (1) an affidavit of an
employee of the creditor; (2) a signature card for the account; (3) an
affidavit of an employee of the assignor of the account; and (4) more than a
dozen monthly account statements.  Id. at *2.  This court likened the
evidence in McElroy to that in Williams v. Unifund CCR Partners
Assignee of Citibank, 264 S.W.3d 231 (Tex. App.—Houston [1st Dist.] 2008, no
pet.).  In Williams, the First Court of Appeals held that a creditor
failed to establish the existence of a contract when it failed to produce the
actual agreement or any other document that established the agreed terms,
including the applicable interest rate or method for determining the
applicability and amount of finance charges.  Id. at 237.  This court
distinguished McElroy from Winchek v. American Express Travel Related
Svcs. Co., Inc., 232 S.W.3d 197, 202–03 (Tex. App.—Houston [1st Dist.]
2007, no pet.).  In Winchek, the First Court of Appeals found the
creditor met his burden to establish the existence of a contract.  Id.
at 204.  In that case, the creditor admitted into evidence a copy of the
creditor’s “Personal Card Member Agreement”, billing statements, and an
affidavit from the creditor’s Manager of Credit Operations.  Id. at
203–04.  The “Personal Card Member Agreement” expressly stated that retention
or use of the card demonstrated the cardholder’s agreement to the terms of the
“Personal Card Member Agreement”.  Id. at 203.  The First Court held
that the cardholder’s demonstrated use of the card manifested her intent that
the contract become effective.  Id. at 204.  This court and its sister
court have drawn a distinction between cases where a card member agreement is
entered into evidence and where there is no card member agreement.  

            In
the case at bar, there was a card member agreement entered into evidence;
however, this agreement contained multiple blanks and referenced outside
documents (not included in evidence) to define terms.  The agreement provided
the cardholder would be bound by the agreement upon his first transaction.  The
agreement stated the cardholder promised to pay according to the terms of the
agreement for all credit he was extended, all finance charges, late charges,
over-limit charges, administrative charges he incurred, and for all collection
costs and attorney’s fees to the extent permitted by applicable law.  The
agreement defined “Annual Percentage Rates and Periodic Rates” as follows:

The Daily Periodic Rate used to determine your periodic
Finance Charges will be a variable rate which may change.  The Spread, Annual
Percentage Rate (“APR”), Daily Periodic Rate, and minimum rate of Finance
Charge for the variable Customary APR for credit card purchases, cash advances,
and the variable Default APR are indicated on the enclosed document entitled
“Important Information Regarding Your Account.”  We calculate the APR by adding
the Index (explained on the enclosed document entitled “Important Information
Regarding Your Account”) to the applicable Spread.  Different types of
transactions may have different APRs.  

The agreement
provided did not contain a document entitled “Important Information Regarding
Your Account”.  Additionally, there were blanks left where the “Late
Charge/Late Payment Fee”, “Returned Check Charge/Returned Payment Fee”, “Annual
Maintenance Fee”, “Replacement Fee”, “Reinstatement Fee”, and “Stop Payment
Fee” amounts should have been filled in by HSBC.  OSI representative Kim Jordan
testified that generally these fields would be populated upon the issuance of
the borrower’s first statement.  

            The
card member agreement provided by appellee does not sufficiently establish the
terms of a contract.  Although there was in fact a card member agreement
entered into evidence, many of the essential terms of the contract were left
out.  See McElroy, 2008 WL 4355276 at *4 (stating an applicable interest
rate is a material term) (citing T.O. Stanley Boot Co., 847 S.W.2d at
221).  In Winchek, the agreement entered into evidence reflected the
late fees, minimum payments under a deferred billing feature, and the method
for calculating finance charges.  Winchek, 232 S.W.3d at 203.  The El
Paso Court of Appeals found evidence sufficient to support the existence of a
contract where the card member agreement entered into evidence noted the terms,
interest rates, and other charges.  Eaves, 301 S.W.3d at 407.  Unlike Eaves
and Winchek, the card member agreement in the case at bar fails
to evidence material terms of the contract.  Even viewing the evidence in a
light that tends to support the finding of the disputed fact, we hold there is
not sufficient evidence of a valid contract.  See McElory, 2008 WL
4355276 at *5; see also T.O. Stanley Boot Co., 847 S.W.2d at 221. 
Appellant’s issues three through six are sustained; however this is not
dispositive of the appeal as there are potential alternative grounds upon which
the trial court’s judgment could be affirmed.    

III.      Account
Stated and Quantum Meruit 

            In
his seventh issue, appellant contends the trial court erred in granting
judgment for appellee based on an open account, account stated, or quantum
meruit because such causes of action are not applicable where the underlying
debt arises from a credit card account.  

            A.        Account
Stated

            A
claim for an account stated differs from a suit on a sworn account, which
requires that personal property or services be provided by the creditor to the
debtor.  McFarland v. Citibank (South Dakota) N.A., 293 S.W.3d 759, 764
(Tex. App.—Waco 2009, no pet.).  A suit on a sworn account is not a proper tool
for credit card collection.  Dulong v. Citibank (South Dakota) N.A., 261
S.W.3d 890, 893 n. 3 (Tex. App.—Dallas 2008, no pet.).  In contrast, a cause of
action for an account stated is the proper tool for credit card collection.  See
id at 893.  

            A
party is entitled to relief under the common law cause of action for account
stated where (1) transactions between the parties give rise to indebtedness of
one another, (2) an agreement, express or implied, between the parties fixes an
amount due, and (3) the one to be charged makes a promise, express or implied
to pay the indebtedness.  McFarland, 293 S.W.3d at 763.  Because an
agreement on which an account stated claim is based can be express or implied,
unlike a breach of contract claim, appellee did not have to produce a written
contract as long as it could produce other evidence of the agreement between
the parties.  See McFarland, 293 S.W.3d at 763.

            An
implied agreement can arise from the acts and conduct of the parties.  Id. 
In McFarland, a credit card debt collection case, the court found there
was sufficient evidence to support a cause of action for an account stated
where there was no agreement entered into evidence.  Id. at 763–64.  In
that case, over sixty pages of credit card statements showing various interest
rates, late fees, and payments were entered into evidence.  Id. at 763. 
The court reasoned that based on evidence of usage of the credit card it could
reasonably infer that the debtor impliedly agreed to pay a fixed amount equal
to the purchases and cash advances he made, plus interest.  Id.  In the
case at bar, appellee has entered similar evidence of an implied agreement
between the parties, such as statements reflecting appellant’s purchases and
payments on the credit card.  Therefore, we hold an implied agreement between
the parties may be reasonably inferred from the credit card statements entered
into evidence.  See Dulong, 261 S.W.3d at 894.  Accordingly, the trial
court did not err in granting judgment for appellee based on an account stated
cause of action.  See McFarland, 293 S.W.3d at 764. 

            B.        Quantum
Meruit 

            Quantum
Meruit is an equitable remedy independent of a particular contract.  Vortt
Exploration Co., v. Chevron U.S.A., 787 S.W.2d 942, 944 (Tex. 1990).  This
theory rests on an implied agreement to pay for benefits received.  Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).  To
recover under quantum meruit, appellee must prove that (1) valuable services
were rendered or materials furnished; (2) to appellant; (3) which appellant
accepted, used, and enjoyed; (4) under such circumstances as to reasonably
notify appellant that appellee (by assignment), in performing, expected to be
paid by as to reasonably notify appellant.  See Vortt Exploration Co., Inc.,
787 S.W.2d at 944; Heldenfels Bros., Inc., 832 S.W.2d at 41.  A party
may recover under quantum meruit only when there is no express contract covering
the services or materials furnished.  Vortt Exploration Co., 787 S.W.2d
at 944.  In McElroy, this court held, a quantum meruit claim was proper
in a credit card debt collection case where the evidence did not support the
existence of a valid contract.  McElroy, 2008 WL 4355276 at *6.  This
court stated that the extension of credit met the services rendered element of
a quantum meruit claim where the borrower did not dispute the existence or use
of the account.  Id.  Thus, in light of this court’s decision in McElroy
and the fact that appellant did not dispute the existence or use of the
account, we hold it was not improper for the trial court to grant judgment in
favor of appellee on a quantum meruit claim.             

            Accordingly,
we overrule appellant’s seventh issue.     

IV.      Attorney’s
Fees       

            In
his eighth issue, appellant contends the trial court erred in awarding
attorney’s fees to appellee because there is no valid contract.  Specifically,
appellant argues the “presentment” requirement for attorney’s fees has not been
met because there is no valid contract.  Section 38.001(1) of the Texas Civil
Practices and Remedies Code authorizes attorney’s fees to the prevailing party
in a claim for services rendered.  Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2008).  Because appellee’s valid quantum meruit claim is based on the
rendition of services to appellant, section 38.001(1) authorizes the award of
attorney’s fees in this case.  See McElroy, 2008 WL 4355276 at *6.  However,
section 38.002 has three perquisites to the award of attorney’s fees: (1) the
claimant be represented by an attorney; (2) the claimant must present the claim
to the opposing party or to a duly authorized agent of the opposing party; and
(3) payment for the just amount owed must not have been tendered before the
expiration of the 30th day after the claim is presented.  Tex. Civ. Prac. &
Rem. Code Ann. § 38.002 (Vernon 2008).  Presentment of a claim under section
38.002 is required to allow the person against whom it is asserted an opportunity
to pay before incurring an obligation for attorney’s fees.  Jones v. Kelley,
614 S.W.2d 95, 100 (Tex. 1981).  No particular form of presentment is required. 
Id.  All that is necessary is an assertion of a debt or claim and a
request for compliance made to the opposing party, and the party’s refusal to
pay.  Panzio v. Young Men’s Christian Ass’n of Greater Houston Area, 938
S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ).  

            During
the bench trial, appellee entered into evidence appellant’s responses to
appellee’s requests for production.  In his responses, appellant provided two
demand letters sent to him from appellee’s law firm.  These letters served to
inform appellant about the debt owed to appellee.  The letters stated appellant
had thirty days to either pay or dispute the debt owed before appellee would
pursue legal action.  We hold that the demand letters appellee sent to
appellant suffice to meet the presentment requirement imposed on appellee.  For
the above reasons, the trial court did not err in granting appellee attorney’s
fees.  We overrule appellant’s eighth issue.    

V.        Counterclaims

            In
issues nine through thirteen, appellant contends the trial court erred by
denying his counterclaims based on violations of the Fair Debt Collection
Practices Act[1]
(FDCPA).  The issues integral to the resolution of the alleged violations of
the FDCPA have already been addressed in this opinion.  However, we will
briefly address appellant’s contentions.  

            A.        Appellee
is the assignee of the HSBC account.

            In
his ninth issue, appellant contends appellee’s allegation that appellee is the
assignee of the HSBC account is a violation of the FDCPA under section 1692e
(10). See 15 U.S.C. § 1692e (10).  This section prohibits: “The use of
any false representation or deceptive means to collect or attempt to collect
any debt or to obtain information concerning a consumer.”  Id.  Appellant
argues that because appellee is not an assignee of the HSBC account, it
violated this section by making a false representation that it was an assignee. 
In the above section regarding appellee’s standing, we addressed this issue. 
We determined there is sufficient evidence appellee is the assignee of the HSBC
account.  Therefore, appellant’s contention regarding section 1692e (10) of the
FDCPA is without merit.  We overrule appellant’s ninth issue.  

            B.        Appellee
did not threaten to take legal action that could not legally be                            taken.

            In
his tenth and eleventh issues, appellant contends appellee violated the FDCPA
by attempting to collect interest, late fees, over-limit fees, and attorney’s
fees when there was no valid contract to support such fees.  Appellant alleges
this is a violation of section 1692e (5), which prohibits “threats to take any
action that cannot legally be taken or that is not intended to be taken.” 15.
U.S.C. § 1692e (5).  Because we held appellee had a valid cause of action under
account stated and quantum meruit, appellee did not threaten to take an action
that could not legally be taken.  We overrule appellant’s tenth and eleventh
issues.    

            C.        Appellee
did not assert any causes of action not allowed by Texas law.

            In
his twelfth issue, appellant contends appellee violated the FDCPA by alleging
causes of action not allowed by law.  Appellant contends appellee violated
section 1692e (10) by asserting open account, account stated, and quantum
meruit causes of action.  See 15 U.S.C. § 1692e (10).  As discussed
above, a cause of action for account stated and/or quantum meruit is proper in
a credit card debt collection case.  See Eaves, 301 S.W.3d at 407–08; McElroy,
2008 WL 4355276 at *6.  Accordingly, we hold appellee has not alleged a cause
of action not allowed under Texas law.  Therefore, there has been no violation
of the FDCPA.  We overrule appellant’s twelfth issue.

            D.        Appellant
is not entitled to damages or attorney’s fees under the                                      FDCPA.

            Because
we hold that the trial court properly denied all of appellant’s FDCPA counterclaims,
we further hold the trial court did not err in denying appellant damages and
attorney’s fees under the FDCPA.  Appellant’s thirteenth issue is overruled.    

 

 

Conclusion

            We
affirm the judgment of the trial court.  

 

                              

                                                                                    

                                                                        /s/        Justice
John S. Anderson

 

 

 

Panel consists of Justices Anderson, Boyce, and
Mirabal.*

 

 

 









[1] 15 U.S.C. § 1692 et seq.





*
Senior Justice Margaret Garner Mirabal sitting by assignment.