Opinion issued March 1, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00831-CV

———————————

Andrew Smith, Appellant

V.

Federated
Financial Corporation of America,
Appellee



 



 

On Appeal from the County Civil Court at Law No. 3

Harris County, Texas



Trial Court Case No. 927,442

 



MEMORANDUM OPINION

          Appellee,
Federated Financial Corporation of America (“Federated”), sued appellant,
Andrew Smith, after Smith defaulted on his obligation to make monthly payments
on a credit account issued by Advanta Bank Corporation (“Advanta”) and
subsequently purchased by Federated. 
Following a bench trial, the trial court entered judgment against Smith
and awarded Federated attorney’s fees. 
In five issues, Smith argues that: (1) the trial court erred in denying
his motion to dismiss based on the cardholder agreement’s forum-selection
clause specifying Utah as the only forum for litigation; (2) the trial court
erred in admitting hearsay documents; (3) the trial court erred in admitting the
affidavit of Federated’s designated agent, Amanda Swift, because it failed to
show that she had the requisite personal knowledge; (4) the trial court erred
in admitting Swift’s business records affidavit because certain documents were
incomplete and unreliable; and (5) the evidence was factually insufficient to
support the judgment.

          We modify and affirm as modified.

                                                                                                                                                                
Background

Smith entered into a cardholder agreement with Advanta in
which Advanta extended a line of credit to Smith.  Smith defaulted on his obligation to make
payments under the terms of the cardholder agreement in October 2004.  Advanta then sold its interest in the account
to Federated.

On October 14, 2008, Federated sued Smith in Harris County
for breach of the cardholder agreement and sought $32,054.20 in principal and
interest owed on the account and $10,684.73 in attorney’s fees.

On November 12, 2008, Smith answered by filing a general
denial.

On January 30, 2009, Federated moved for summary judgment
seeking the amount due on the account and attorney’s fees.  Federated supported its motion by attaching
the affidavit of Amanda Swift, Federated’s designated agent, who averred that the
attached documents had been kept by Federated in the regular course of its
business.  Federated attached a copy of
the “Contractual Forward Flow Bill of Sale and Assignment” in which Advanta
assigned its interest in Smith’s account to Federated, Smith’s application for
the “MasterCard Executive Business Card R.S.V.P.” in his own name as the owner
of A & T’s Auto and Truck Services, multiple account statements from
Advanta reflecting Smith’s use of the card, and a copy of the Advanta Business
Card Agreement (the “Agreement”) between Advanta and Smith.  The Agreement contained the following
provisions:

In
this Agreement “you,” “your,” “yours,” and “Cardmember” mean the person named
on the Advanta Business Card, the Signing Individual, the Business, and any other
legal entity or person who is contractually liable for, has signed or submitted
an application for, has used or has permitted others to use a Card or the
Account. . . .  “Issuer,”
“we,” “us,” and “our” refer to Advanta Bank Corp., its successors and assigns.
. . .

 

By
applying to use for credit . . . you represent that you . . . agree to be
liable for all charges to the Account as provided in this Agreement [and] agree
to be bound by the terms and conditions of this Agreement. . . .

 

.
. . .

 

31. CONTROLLING LAW AND JURISDICTION:  This Agreement shall be governed solely by
and interpreted entirely in accordance with the laws of the State of Utah,
except as (and to the degree that) such laws are superseded by the banking or
other laws of the United States, regardless of where you reside.  We will process the Account application, make
the decision to open the Account and advance credit for you from our Utah
offices.  You agree that all terms,
conditions, and other provisions relating to the method of determining the
balance upon which the Interest rate or finance charges are applied, and all
other terms of this Agreement, shall be deemed to be material to the
determination of the interest rate.  YOU
CONSENT TO PERSONAL JURISDICTION IN THE STATE AND FEDERAL COURTS IN UTAH AND
AGREE THAT ANY LAWSUIT PERTAINING TO THE ACCOUNT MUST BE BROUGHT ONLY IN SUCH
COURTS IN UTAH, REGARDLESS OF WHO FILES THE SUIT, AND MAY BE MAINTAINED ONLY IN
THOSE COURTS UNLESS AND UNTIL ANY PARTY ELECTS ARBITRATION PURSUANT TO THE
ARBITRATION PROVISION IN THIS AGREEMENT.

 

On February 20, 2009, Smith responded to Federated’s
motion for summary judgment and argued that he had a right to choose to
arbitrate any dispute under the cardholder agreement, that he “ha[d] disputed
the debt under oath in this lawsuit and ha[d] demanded arbitration,” and that
Federated, as the assignee of Advanta, had failed to abide by the terms of the
cardholder agreement with respect to arbitration.  Smith also argued that there were material
facts at issue in the lawsuit and that he was “entitled to a trial on the
merits of this claim, subject to the parties’ agreement to arbitrate.”  Smith also challenged the sufficiency of
Swift’s affidavit, arguing that her assertion of personal knowledge of the
facts contained in the motion for summary judgment and her affidavit based on a
“review of the file in this matter” was inadequate because she was not an
employee of Advanta, the entity that had created and maintained the documents
attached to the affidavit.

The trial court did not rule on the motion for summary
judgment.  The case was originally set
for trial on May 19, 2009, but the setting was eventually postponed.

On December 15, 2009, Federated filed its “Notice of
Filing Business Record Affidavit” of Amanda Swift.  The affidavit stated:

My name is
Amanda Swift.  I am over 21 years of age,
am of sound mind, capable of making this affidavit, and have personal knowledge
of the facts herein stated.

I am a
designated agent and have personal knowledge of the books and records of the
Plaintiff concerning this claim against the Defendant.  Attached hereto are 25 pages of records from
the files of FEDERATED FINANCIAL CORPORATION OF AMERICA.  These said 25 pages of records are kept by
FEDERATED FINANCIAL CORPORATION OF AMERICA in the regular course of its
business as permanent records of the company and it was in the regular course
of business for an employee with personal knowledge of the act, event, or
condition recorded, to make the memorandum or record, or to transmit
information thereof to be complete in such attached memorandum or record; and
the memorandum or record was made at or near the time of the act, event, or
condition recorded or indicated in said record, or reasonably soon thereafter.  The records attached hereto are the originals
or exact duplicates thereof of the records and documents maintained by
Plaintiff pertaining to the account of ANDREW SMITH, which was the name carried
in our books and records.

          Per the Plaintiff’s Original Petition,
there is a balance owing on said account of $32,054.20 as of September 29,
2008, after giving credit for all payments and credits.

          I have read the above and foregoing
affidavit, and within my personal knowledge each fact stated herein is true and
correct.”

 

Attached to the affidavit were the following business
records: an electronic printout of various details relating to Smith’s account;
the “Contractual Forward Flow Bill of Sale and Assignment,” assigning certain
Advanta accounts to Federated; an affidavit of account statement by
vice-president of Federated Joan Flees providing that Smith’s account was owned
by Federated, was overdue in the amount of $32,054.20, and that there were no
uncredited payments, counterclaims, or offsets against that debt; Smith’s
signed “MasterCard Executive BusinessCard R.S.V.P.” application; multiple
account statements issued by Advanta reflecting Smith’s use of the credit card;
and the “Advanta Business Card Agreement” providing the terms and conditions of
the card’s use.

The case was again set for trial on February 22, 2010, and
it was reset a third time to March 1, 2010, and then to May 10, 2010.

On March 2, 2010, Smith moved to dismiss the suit, arguing
that “pursuant to the agreement of the parties, jurisdiction and venue are
restricted to the State of Utah.”  He cited
the portion of the Agreement providing:

This
agreement shall be governed solely by and interpreted entirely in accordance
with the laws of the State of Utah, . . . . YOU CONSENT TO PERSONAL
JURISDICTION IN THE STATE AND FEDERAL COURTS IN UTAH AND AGREE THAT ANY LAWSUIT
PERTAINING TO THE ACCOUNT MUST BE BROUGHT ONLY IN SUCH COURTS IN UTAH,
REGARDLESS OF WHO FILES THE SUIT, AND MAY BE MAINTAINED ONLY IN THOSE COURTS. .
. .

 

He
made no further argument and did not attach a complete draft of the
Agreement.  

In its
response to the motion to dismiss, Federated argued that Smith had subjected
himself to the trial court’s jurisdiction, and, alternatively, that the trial
court should transfer the case to Utah rather than dismissing it.  The trial court denied the motion to dismiss
on April 5, 2010, without stating any ground for its ruling.  

Smith then
amended his answer, again asserting a general denial and adding the affirmative
defense that Federated had failed to meet conditions precedent to filing suit
because it was required to bring the suit in Utah and because it was required
to arbitrate its cause of action.

          On August 11, 2010, Smith filed his
objections to Federated’s business records affidavit, arguing that the affidavit
failed to state that the affiant, Swift, had personal knowledge of the manner
in which Advanta’s records were prepared; that it failed to state that Swift
was the same person who had personal knowledge of the acts, events, or
conditions recorded; that some of the records were incomplete or referred to
other documents or definitions which were not included in the records; and that
the “Mastercard Executive Business Card RSVP Agreement [was] not complete.”

          The case proceeded to a bench trial on
August 23, 2010.  The trial court
overruled Smith’s objections to Swift’s affidavit and Federated’s
evidence.  Smith also argued at trial:

[Smith]:                I would like to show a condition
precedent of the contract is arbitration. . . .

 

[Trial court]:         Which is waived by agreeing to go
today, and you already agreed that you were going to waive it.

 

[Smith]:                Okay.  Another condition precedent under their contract
is that any lawsuit must be brought in the state of Utah.  So welcome to Utah.

 

[Trial court]:         And you preserved that error?

 

[Smith]:                I have an affirmative defense on
file, yes, Your Honor.  It’s a condition
precedent.

 

The
trial court entered judgment against Smith, awarding Federated $32,054.20 plus
pre- and post-judgment interest and attorney’s fees in the amount of
$10,684.73.  Smith moved to modify the
judgment, arguing that the trial court had reduced the attorney’s fees award to
$6,000 at trial, but it had awarded more than $10,000 in its judgment, and that
there was no evidence supporting the award of pre-judgment interest.

                                                                                                                                          
Forum-Selection Clause

In his first issue, Smith argues that the trial court
erred in denying his motion to dismiss the case because it was not filed in
compliance with the mandatory forum-selection provision in the cardholder agreement.  Federated argues that Smith waived this
complaint[1]
and that the provision he cited was not mandatory.

We review the enforcement of a forum-selection clause for
an abuse of discretion.  Phoenix Network Techs. (Europe) Ltd. v. Neon
Sys., Inc., 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).  Enforcement of forum-selection
clauses is mandatory unless the party opposing enforcement “clearly show[s]
that enforcement would be unreasonable and unjust, or that the clause was
invalid for such reasons as fraud or overreaching.”  In re
AIU Ins. Co., 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding) (citing The Bremen v. Zapata Off-Shore Co., 407
U.S. 1, 15 92 S. Ct. 1907, 1916 (1972)). 
“[A] clause would come within these exceptions if enforcement would
contravene a strong public policy of the forum in which suit was brought, or
when the contractually selected forum would be seriously inconvenient for
trial.”  Id.

However, the right to enforcement of forum-selection
clauses can be waived.  See id. at 120–21.  A party waives a forum-selection clause by
substantially invoking the judicial process to the other party’s detriment or
prejudice.  In re ADM Investor Servs., Inc., 304 S.W.3d 371, 374 (Tex. 2010)
(orig. proceeding).  There is a strong
presumption against such waiver.  Id.  Waiver
requires intent, either the intentional relinquishment of a known right or
intentional conduct inconsistent with claiming that right.  In re
Gen. Elec. Capital Corp., 203 S.W.3d 314, 316 (Tex. 2006) (per curiam)
(orig. proceeding).

The Texas Supreme Court has treated the waiver of
forum-selection clauses as analogous to the waiver of arbitration clauses, as
an arbitration clause is a type of forum-selection clause, and it has adopted
the test outlined in Perry Homes v. Cull
to analyze waiver of forum-selection clauses. 
See, e.g., ADM Investor Servs., 304 S.W.3d at 374; AIU Ins. Co., 148 S.W.3d at 115–16; see also Perry Homes, 258 S.W.3d 580, 597 (Tex. 2008) (orig.
proceeding) (adopting test for determining whether party waived arbitration).  In Perry
Homes, the supreme court held that “prejudice” in this context means
“inherent unfairness [caused by] a party’s attempt to have it both ways by
switching between litigation and arbitration to its own advantage.”  258 S.W.3d at 597.  The determination of whether waiver occurred
must be made on a case-by-case basis based on the totality of the
circumstances.  Id. at 591.  

          Perry
Homes listed some factors to be considered in a waiver analysis, including:
(1) whether the movant was the plaintiff (who chose to file in court) or the
defendant (who merely responded); (2) how long the movant delayed before
seeking arbitration; (3) whether the movant knew of the arbitration clause all
along; (4) how much pretrial activity related to the merits rather than
arbitrability, jurisdiction, or standing; (5) how much time and expense had
been incurred in litigation; (6) whether the movant sought or opposed
arbitration earlier in the case; (7) whether the movant filed affirmative claims
or dispositive motions (sought judgment on the merits); (8) what discovery
would be unavailable in arbitration; (9) whether activity in court would be
duplicated in arbitration; (10) when the case was to be tried; and (11) how
much discovery had been conducted, who initiated it, and how much of it would
be useful in arbitration.  Id. at  591–92.  No
single factor is dispositive to the inquiry into whether a party has waived its
right to enforce an arbitration clause.  Id. at 591.

          While some of these factors do not fit
as well into an analysis of waiver of a forum-selection clause, they provide a
paradigm for determining whether Smith waived his right to enforce the
forum-selection clause under the totality of the circumstances in this
case.  Here, Smith waited more than
sixteen months after Federated filed suit to raise the issue of the forum-selection
clause.  At that point, he had already
filed an answer, responded to Federated’s motion for summary judgment, and
raised the issue of arbitration. 
Furthermore, discovery was completed and the case had been set for trial
on more than one date before he filed his motion to dismiss.  The motion was denied by the trial court, and
Smith took no further action to pursue his argument that he was entitled to a
trial in Utah under the terms of the forum-selection clause; instead, he
proceeded to a trial on the merits.  In
fact, the statements of the trial court and Smith’s counsel during the bench
trial indicated that Smith acquiesced to the trial in Harris County at some
point after he filed his motion to dismiss.

          Applying the Perry Homes factors to these facts, we conclude that while Smith,
the movant, was the defendant below and merely responded to the suit filed
against him, several of the other factors weigh against him.  He waited more than sixteen months to assert
his argument regarding the forum-selection clause, even though the clause was
available in the agreement he himself had signed with Advanta; significant
pretrial activity related to the merits of Federated’s claim had already taken
place, including Federated’s motion for summary judgment, Smith’s own response
to that motion, and all discovery; and significant time and expense has been
incurred in litigating the merits of Federated’s claims, both at the time that
Smith originally filed his motion to dismiss and again after a full trial on
the merits had occurred.  Thus, Federated was prejudiced.  It invested significantly in the litigation
process before Smith filed his motion to dismiss, and then, after Smith agreed
to proceed with a Harris County trial, it participated in a trial on the merits
and obtained a judgment against Smith.

Smith’s actions in attempting to
pursue his forum-selection argument at a late stage in the litigation, then
acquiescing to trial in Harris County without further pursuing his forum-selection
argument, and then raising the complaint again after a trial had occurred
demonstrate his “attempt to have it both ways by switching between litigation
and [enforcing his forum-selection clause] to [his] own advantage.”  Id.
at 597.  We conclude that Smith waived enforcement of the
forum-selection clause by substantially invoking the judicial process to Federated’s
detriment or prejudice and that his actions in pursuing this issue demonstrated
intentional conduct inconsistent with claiming that right.  See ADM
Investor Servs., 304 S.W.3d at 374; Gen.
Elec. Capital Corp., 203 S.W.3d at 316.

          We overrule Smith’s first issue.

                                                                                                                                         
Evidentiary Complaints

In his second, third, and fourth issues, Smith complains about
the trial court’s decision to admit Federated’s business records affidavit and
business records.  Specifically, Smith
argues that the business records are hearsay documents, that Swift’s affidavit
was inadequate because it failed to show that she had the requisite personal
knowledge, and that certain documents were incomplete and unreliable.

A.              
Standard of Review

Evidentiary rulings are committed to the trial court’s
sound discretion.  Simien v. Unifund CCR Partners, 321 S.W.3d 235, 239 (Tex.
App.—Houston [1st Dist.] 2010, no pet.) (citing Bay Area Healthcare Grp., Ltd. v. McShane, 239 S.W.3d 231, 234
(Tex. 2007)).  A trial court abuses its
discretion when it acts without reference to any guiding rules and principles.  Id.  We must uphold the trial court’s
evidentiary ruling if there is any legitimate basis for the ruling.  Id. (citing
Owens-Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998)). 

B.              
Admission of Business Records Affidavit

Smith argues that the trial court erred in admitting
hearsay documents because Swift’s affidavit “failed to prove up the
prerequisites of [Texas Rules of Evidence] 803(6) or (7).”  He argues that Swift did not properly assert
personal knowledge of the attached records, that she did not assert any
knowledge of Advanta’s records, and that she did not “refer to the purchase and
assignment of the account from Advanta to Federated.”

“‘Hearsay’
is a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Tex. R. Evid. 801(d).  The proponent of hearsay has the burden of
showing that the testimony fits within an exception to the general rule
prohibiting the admission of hearsay evidence.  Simien,
321 S.W.3d at 240 (citing Volkswagen of
Am., Inc. v. Ramirez, 159 S.W.3d 897, 908 n.5 (Tex. 2004)).

Rule
803(6) of the Texas Rules of Evidence provides an exception to the hearsay rule
for business records:

A . . . record . . . made at or near
the time by, or from information transmitted by, a person with knowledge, if
kept in the course of a regularly conducted business activity, and if it was
the regular practice of that business activity to make the memorandum, report,
record, or data compilation, all as shown by the testimony of the custodian or
other qualified witness, or by affidavit that complies with Rule 902(10),
unless the source of information or the method or circumstances of preparation
indicate lack of trustworthiness.

Tex.
R. Evid. 803(6); Simien, 321 S.W.3d at 240.  The predicate for admission of the business
records may be established “by affidavit that complies with Rule 902(10).”  Tex.
R. Evid.
803(6). 

Rule 902(10) provides
that records “shall be admissible in evidence in any court in this state upon
the affidavit of the person who would otherwise provide the prerequisites of Rule
803(6) or (7).” [2]  Tex. R.
Evid. 902(10)(a).  Rule 902(10) also
provides a form for the affidavit and states that the affidavit “shall be
sufficient if it follows this form though this form shall not be exclusive, and
an affidavit which substantially complies with the provisions of this rule
shall suffice . . . .”  Tex.R. Evid. 902(10)(b).  

The form specified by
the rule is as follows:

My name is ____, I am of sound mind,
capable of making this affidavit, and personally acquainted with the facts
herein stated:

I am the custodian of the records of
_____. Attached hereto are _____ pages of records from ____. These said _____
pages of records are kept by ____ in the regular course of business, and it was
the regular course of business of _____ for an employee or representative of
_____, with knowledge of the act, event, condition, opinion, or diagnosis,
recorded to make the record or to transmit information thereof to be included
in such record; and the record was made at or near the time or reasonably soon
thereafter. The records attached hereto are the original or exact duplicates of
the original.

Id.

A document authored or created by a third party may be
admissible as business records of a different business if: (1) the document is
incorporated and kept in the course of the testifying witness’s business; (2)
that business typically relies upon the accuracy of the contents of the
document; and (3) the circumstances otherwise indicate the trustworthiness of
the document.  Simien, 321 S.W.3d at 240–41 (stating that previous case law of
this Court relied on federal authorities construing Federal Rule of Evidence
803(6)) (citing Bell v. State, 176
S.W.3d 90, 92 (Tex. App.—Houston [1st Dist.] 2004, no pet.) and Harris v. State, 846 S.W.2d 960, 963–64
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d)).  We apply these three factors in determining
whether the trial court properly admitted Swift’s affidavit.  See id.
at 240–41.

Swift’s affidavit stated, in relevant part:

I
am a designated agent and have personal knowledge of the books and records of
the Plaintiff concerning this claim against the Defendant.  Attached hereto are 25 pages of records from
the files of FEDERATED FINANCIAL CORPORATION OF AMERICA.  These said 25 pages of records are kept by
FEDERATED FINANCIAL CORPORATION OF AMERICA in the regular course of its
business as permanent records of the company and it was in the regular course of
business for an employee with personal knowledge of the act, event, or
condition recorded, to make the memorandum or record, or to transmit
information thereof to be complete in such attached memorandum or record; and
the memorandum or record was made at or near the time of the act, event, or
condition recorded or indicated in said record, or reasonably soon
thereafter.  The records attached hereto
are the originals or exact duplicates thereof of the records and documents
maintained by Plaintiff pertaining to the account of ANDREW SMITH, which was
the name carried in our books and records.

 

1.                
Incorporated
and Kept in the Course of Business

In Simien, this
Court analyzed the admissibility of an affidavit in which the affiant stated
that the attached documents were “kept by [Unifund] in the regular course of
its business as permanent records of the company.”  Id.
at 242.  The affidavit also referred to
the defendant’s records by stating that they had “been maintained in files
under [the affiant’s] supervision and control.”  Id.  The affiant in Simien specified that he had reviewed the file, was the designated
agent for the file, and had personal knowledge of the books and records
concerning the specific defendant.  Id.  The
Simien court concluded that this
affidavit sufficiently showed that Unifund had incorporated the records of the
original debt-holder.  Id.

Similarly, here, Swift’s affidavit stated that she was the
“designated agent and [has] personal knowledge of the books and records of
[Federated] concerning this claim against [Smith].”  She further averred that the attached
documents were kept by Federated “in the regular course of its business as
permanent records of the company.”  Thus,
the language used by Swift is substantially similar to that approved by this
Court in Simien, and it tracks the
language in the form promulgated by Rule 902(10)(b).  See Tex. R. Evid. 902(10)(b); Simien, 321 S.W.3d at 242.  We conclude that the affidavit sufficiently
shows that Federated incorporated Advanta’s records and kept them in the
regular course of its business.  See Simien, 321 S.W.3d at 242.  

2.                
Reliance
on the Accuracy of the Documents

Smith argues that “[n]othing in the Swift affidavit
indicates how she could attest to the veracity, authenticity or reliability of
Advanta’s records now held by Federated.” 
However, this Court held in Simien
that such a statement was not required.  See id. at 243.  The Simien
court observed that the affidavit provided that the affiant had personal
knowledge of the books and records concerning the defendant, that he had
maintained the files under his supervision and control, and that the account
remained unpaid in the amount stated in the affidavit.  Id.  The Court then held:

Similar
to the documents in Bell that showed a settled claim, here Unifund
relied on the accuracy of the documents to determine the existence and value of
Simien’s debt that is now due to Unifund.  We hold the second factor in Bell is
satisfied because the evidence shows Unifund reasonably relied upon the
accuracy of the contents of the documents it received from Citibank.

 

Id.

          Here,
Swift’s affidavit likewise shows that she had personal knowledge of Smith’s
file, that she was Federated’s designated agent for those records, and that
Smith’s account remained unpaid in the amount stated in the affidavit.  Thus, the evidence here demonstrates that
Federated reasonably relied upon the accuracy of the contents of the documents
that it received from Advanta.  See id. 

3.                
Circumstances
Indicating Trustworthiness of the Documents

In Simien, we
observed that financial institutions like Citibank or Advanta “must keep
careful records of its customer’s credit card debt, otherwise its ‘business
would greatly suffer or even fail.’”  Id. at 244 (quoting Harris, 846 S.W.2d at 963). 
We further observed that “failure to keep accurate records could result
in criminal or civil penalties.”  Id. (citing Tex. Fin. Code Ann. § 392.304(a)(8) (Vernon 2006)
(prohibiting misrepresentation of amount of consumer debt), Tex. Fin. Code Ann. § 392.402 (Vernon
2006) (providing criminal penalties for violation of Chapter 392 of Texas
Finance Code), Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692e(2)(a)
(2005) (prohibiting misrepresentation of amount of debt), and 15 U.S.C.S § 1692l
(2005) (providing for administrative enforcement of Fair Debt Collection
Practices Act)).  We concluded, “These
circumstances provide an indication of trustworthiness of the Citibank
documents.”  Id. 

We conclude that those same circumstance also provide an
indication of the trustworthiness of Advanta’s documents, as Advanta is in a situation
identical to that of Citibank in Simien.

          Thus,
we conclude that the trial court did not err in determining that the business
records affidavit was admissible and that the documents attached were accurate
and trustworthy.

          We
overrule Smith’s second, third, and fourth issues.

C.              
Completeness and Sufficiency of the Evidence

In his fifth issue, Smith argues that the trial court
erred because the documents attached to the business records affidavit were
incomplete and were insufficient to support the judgment against him.  

In reviewing the factual sufficiency of the evidence, we
must examine the evidence that both supports and is contrary to the
judgment.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  A judgment is factually sufficient unless it
is so against the great weight and preponderance of the evidence as to be
clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986) (per curiam).  To prevail on a
breach of contract claim, a plaintiff must prove the following essential
elements: (1) the existence of a valid contract, (2) performance or tendered
performance by the plaintiff, (3) breach of the contract by the defendant, and
(4) damages sustained as a result of the breach.  Winchek
v. Am. Express Travel Related Servs. Co., 232 S.W.3d 197, 202 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).

Federated presented factually sufficient evidence to
establish the essential elements of its breach of contract claim.

1.                
Existence
of a Valid Contract

Parties form a binding contract when the following
elements are present: (1) an offer, (2) an acceptance in strict compliance
with the terms of the offer, (3) meeting of the minds, (4) each party’s
consent to the terms, and (5) execution and delivery of the contract with the
intent that it be mutual and binding.  Id. at 202.  To be enforceable, a contract must be
sufficiently certain to enable a court to determine the rights and responsibilities
of the parties.  Id. (citing T.O. Stanley Boot
Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992)). 

Federated provided Smith’s signed application for the
credit card and the accompanying terms and conditions issued by Advanta.  Thus, Federated presented evidence of an
offer, Smith’s acceptance of the terms of the offer, a meeting of the minds and
consent to the essential terms, and execution and delivery of the contract with
the intent that it be mutual and binding. 
Federated also presented account statements reflecting that Smith
accepted the card and used it, further demonstrating the existence of a valid
agreement.  See Id. at 204 (stating that delivery is shown when parties
manifest intent through their actions and words that contract become effective)
(citing Hay v. Citibank (South Dakota)
N.A., No. 14-04-01131-CV, 2006 WL 2620089, at *3 (Tex. App.—Houston [14th
Dist.] Sept. 14, 2006, no pet.) (mem. op.) (holding that use of credit card and
payments on account demonstrate existence of contract)).  

Finally, Federated presented the “Contractual Forward Flow
Bill of Sale and Assignment,” assigning certain Advanta accounts to Federated,
and the affidavit of Joan Flees, vice-president of Federated, providing that
Smith’s account is owned by Federated.  Thus,
Federated presented evidence demonstrating its own interest in the
Agreement.  See Jackson v. Thweatt, 883 S.W.2d 171, 174 (Tex. 1994) (“[A]n
assignee receives the full rights of the assignor . . . .”).

Smith argues that the business card application he signed
refers to “terms and conditions elsewhere not contained in the portion
containing [Smith’s] signature.” 
However, the “terms and conditions” of the credit card’s issuance were
provided in the document entitled “Advanta Business Card Agreement.”  Smith cites no authority, nor could we find
any, indicating that the terms are required to appear in the same portion of
the agreement as the defendant’s signature. 
See DeWitt Cnty. Elec. Coop., Inc.
v. Parks, 1 S.W.3d 96, 102 (Tex. 1999) (“Under generally accepted
principles of contract interpretation, all writings that pertain to the same
transaction will be considered together, even if they were executed at
different times and do not expressly refer to one another.”); DeClaire
v. G & B McIntosh Family Ltd. P’ship, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (stating
that contract can be effective if signed by only one party if other party
accepts by his acts, conduct, or acquiescence in the terms of the contract).

Smith also argues that the record contained different
versions of the cardholder agreement and the assignment from Advanta to
Federated.  However, only one version of
each of these two documents was attached to the business records affidavit and
admitted during trial, and Smith himself did not present any other evidence of
the alleged terms of the credit card agreement during trial.  Any other documents appearing in the record
as attached to pretrial motions or responses are irrelevant for sufficiency
purposes.  See, e.g., Canutillo Indep.
Sch. Dist. v. Olivares, 917 S.W.2d 494, 499 (Tex. App.—El Paso 1996, no
pet.) (“In reviewing a factual sufficiency challenge, . . . this Court
considers and weighs all the evidence presented
at trial.”) (emphasis added) (citing Lofton
v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986)).

Finally, Smith argues that key terms in the assignment
from Advanta to Federated—“funding tape” and “cut-off date”—were missing and
that the record contained nothing that specifically demonstrated that the Smith
account was one that was assigned.  However,
as we have already discussed, the “Contractual Forward Flow Bill of Sale and
Assignment,” assigning certain Advanta accounts to Federated, and Flees’s
affidavit, providing that Smith’s account was owned by Federated, were
sufficient to establish Federated’s interest in Smith’s account.  Smith did not present any evidence
contradicting this fact.  Thus, we cannot
conclude that the trial court’s determination that a valid contract existed between
Smith and Federated was so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
See Cain, 709 S.W.2d at 176.

2.                
Performance
and Breach

To prove an action for breach of contract, a plaintiff
must also establish that it performed or tendered performance of its
contractual obligations.  See Winchek, 232 S.W.3d at 202.  Here, Federated provided evidence in the form
of Smith’s account statements that Advanta performed its contractual
obligations by issuing credit to Smith that he used to purchase goods and
services.  Smith did not present any
evidence indicating that Advanta failed to perform its contractual obligations.

Furthermore, Federated provided evidence of Smith’s breach
of his obligation to pay for all charges to the account in the form of the
Advanta account statements, and it provided Flees’s affidavit, providing that
Smith’s account was owned by Federated, that it was overdue in the amount of
$32,054.20, and that there were no uncredited payments, counterclaims, or
offsets against that debt.  See id. at 202 (providing that plaintiff
must establish defendant’s breach of its obligation to prevail on breach of
contract claim).  Again, Smith did not
present any evidence that he did not incur the charges to his account for which
Federated, as Advanta’s assignee, now seeks repayment, or that he made payments
or was due offsets for which he did not receive credit.

Thus, we conclude that the evidence was factually
sufficient to support a conclusion that Federated established the elements of
performance and breach.

3.                
Damages

Finally, to prevail on its breach of contract claim,
Federated had to establish that it was damaged by Smith’s breach of the
Agreement.  See id. at 202.  Federated
provided evidence in the form of the Advanta account statements and Flees’s
affidavit establishing that Smith’s account was past due in the amount of
$32,054.20.  Smith did not present any
evidence that he owed a different amount of money or that he was entitled to
any credits or offsets.

Thus, we conclude that the evidence was factually
sufficient to support the damages awarded by the trial court to Federated.  We hold that the evidence was factually
sufficient to support the judgment.  See Cain, 709 S.W.2d at 176.

We overrule Smith’s fifth issue.

                                                                                                                                                           
Attorney’s Fees

In his sixth issue, Smith argues that the trial court
erred in awarding Federated $10,034 in attorney’s fees when it had awarded only
$6,000 in attorney’s fees at trial. 
Federated concedes that this portion of the trial court’s judgment was
in error.  We observe that the trial
court, in its findings of fact filed post-trial, stated that Federated “is
entitled to reasonable and customary attorney’s fees of $10,684.73.”  However, this finding contained a handwritten
notation striking through the original amount and stating “$6,000 as ordered by
the court.”  This notation is initialed
by the trial court. 

Thus, we sustain Smith’s sixth issue, and modify the
judgment accordingly.  See Tex.
R. App. P. 43.2(b) (allowing appellate courts to modify judgments and
affirm as modified).

                                                                                                                                                                   
Conclusion

We modify the judgment of the trial court to reflect that the
proper amount of attorney’s fees is $6,000, and we affirm it as modified.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel consists of Justices Keyes, Bland, and
Sharp.

 











[1]           Federated actually argues that Smith
“waived the forum selection clause because he failed to enforce it until after
losing an agreed trial on the merits and Federated has been prejudiced as a
result.”  This is a misrepresentation of
the record, which shows that Smith filed a pretrial motion to dismiss seeking
to enforce the forum-selection clause in the Agreement.  Federated also argued that Smith
substantially invoked the judicial process, causing it prejudice, before he
sought enforcement of the forum-selection clause.  Federated pointed out that Smith “failed to
mandamus the trial court’s denial of his Motion to Dismiss and instead agreed
to waive arbitration and proceed with a trial on the merits.”  However, the only indication of such an
agreement appearing in the record is the trial court’s statement that Smith
“agreed that [he] was going to waive” his arbitration request. 





[2]
          Texas
Rule of Evidence 803(7) provides:

Evidence
that a matter is not included in the memoranda, reports, records, or data
compilations, in any form, kept in accordance with the provisions of paragraph
(6), to prove the nonoccurrence or nonexistence of the matter, if the matter
was of a kind of which a memorandum, report, record, or data compilation was
regularly made and preserved, unless the sources of information or other
circumstances indicate lack of trustworthiness.

            Tex. R. Evid. 803(7).